Lawrence MATHIEU

v.

BATH IRON WORKS and American
International Adjustment Co.

Supreme Judicial Court of Maine.

Argued Oct. 30, 1995.
Decided Dec. 5, 1995.

Paul Macri (orally), Berman & Simmons, P.A., Lewiston, for Employees.

Margaret E. Phair (orally), Robinson, Kriger, McCallum & Greene, P.A., Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

Lawrence Mathieu appeals from a decision of the Workers' Compensation Commission denying his petition for restoration after finding that his short-term total incapacity was solely the result of a nonwork-related injury. He also appeals from the Workers' Compensation Board's refusal to review his appeal. Mathieu contends that the Commissioner erred in applying the doctrine of "independent intervening cause" to determine workers' compensation liability.[1] *Brackett v.*

---

1. The new Workers' Compensation Act provides that "[i]f an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act." *Maine Workers' Compensation Act of 1992*, P.L. ch. 885 (effective January 1, 1993), *codified as* 39-A M.R.S.A. § 201(5) (Supp.1994–95). Because the proceeding was pending on the effective date of Title 39-A, this appeal is governed exclusively by former Title 39 and does not implicate the new Act. *Riley v.*

*A.C. Lawrence Leather Co.,* 559 A.2d 776, 777 (Me.1989). Mathieu further contends that the Board's summary decision to decline a review in all of the cases pending before the Appellate Division at the time that it went out of existence on January 1, 1994, was a violation of its statutory authority, 39–A M.R.S.A. § 320 (Supp.1994), and a violation of his constitutional rights of due process and equal protection. P.L.1991, ch. 885, § A–10(2). We disagree. The Commissioner applied the correct legal standard in denying Mathieu's petition for restoration. The Board's summary denial of administrative review did not contravene its statutory authority or violate Mathieu's constitutional right of due process and equal protection. We therefore affirm the decisions of the Commission and the Board.

Mathieu suffered a work-related back injury on July 25, 1988, while employed as a heavy equipment and fork-lift operator at Bath Iron Works. Mathieu returned to work as an inventory clerk in 1989 at reduced pay and in 1990 was awarded 31% partial incapacity benefits. On March 2, 1991, Mathieu injured his ankle in a nonwork-related car accident and did not return to light-duty work until August 1991. Mathieu continued, however, to receive 31% incapacity benefits during his absence and after he returned to work following the car accident. Contending that the car accident injury aggravated or otherwise combined with his prior back injury, Mathieu filed a petition for restoration seeking total incapacity benefits. The Commission concluded that Mathieu "was totally incapacitated solely as a result of the motor vehicle accident during the period of March 2, 1991 through August 5, 1991, which acted as an independent intervening cause of the employee's incapacity during that time." It denied Mathieu's petition for restoration and his motion for findings of fact.

Mathieu appealed to the former Appellate Division, which failed to resolve his appeal prior to going out of existence on January 1, 1994. The Board declined to review any of the approximately 196 unresolved appeals pending with the Division on January 1, 1994. 39–A M.R.S.A. § 320 (Supp.1994); P.L.1991,

*Bath Iron Works,* 639 A.2d 626, 627–28 (Me.

ch. 885, § A–10(2). We granted Mathieu's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1994).

## I.

 Mathieu contends that the doctrine of "independent intervening cause" is a tort law doctrine that does not apply in workers' compensation cases. Our decisions make clear that the presence of an intervening independent cause of incapacity will not remove the employer's liability for workers' compensation as long as the prior injury remains a "cause" of the employee's ongoing condition. *Brackett,* 559 A.2d at 778; *Smith v. Dexter Oil Co.,* 408 A.2d 1014, 1015–16 (Me.1979); *Richardson v. Robbins Lumber, Inc.,* 379 A.2d 380, 383 (Me.1977). Mathieu bore the burden of proof on his petition for restoration to show that his short-term total incapacity was caused, at least in part, by a work-related injury. Although the Commissioner referred to the ankle injury as an "independent intervening cause," the decision read as a whole suggests that because Mathieu "was totally incapacitated solely as a result of the motor vehicle accident during the period of March 2, 1991 through August 5, 1991," his prior work injury ceased to be a "cause" of his incapacity during the period of his totally debilitating ankle condition.

 We give deference to the factual findings of the Commission, particularly when those findings require an evaluation of medical evidence. *Smith v. Great Northern Paper, Inc.,* 636 A.2d 438, 439 (Me.1994); *McKenzie v. C.F. Hathaway, Co.,* 415 A.2d 252, 253 (Me.1980). Contrary to Mathieu's assertion, there is competent evidence in the record to support the conclusion that Mathieu's work-related and nonwork-related injuries were causally unrelated and that his lost time from work was solely a result of his ankle injury and subsequent ankle surgery. Based on this evidence, the Commissioner reasonably may have concluded that Mathieu had not met his burden to show that his prior back injury was a cause of his short-term total incapacity.

1994).

## II.

▪ Prior to 1981 a party could, in effect, take a direct appeal as of right to the Law Court from a decision of the former Workers' Compensation Commission after obtaining a *pro forma* decree from the Superior Court. *Wilner Wood Prods. Co. v. Moyse*, 466 A.2d 1257, 1259 (Me.1983). *See* 39 M.R.S.A. § 103 (1978), *repealed and replaced by* P.L.1981, ch. 514, § 6, *codified as* 39 M.R.S.A. §§ 103–A–E (1989). The Legislature amended the Act in 1981 and created the Appellate Division to hear appeals from decisions of individual commissioners, with a right of discretionary review by the Law Court of decisions of the Division.[2] P.L.1981, ch. 514, § 6, *codified as* 39 M.R.S.A. § 103–A–E (1989); *Wilner Wood*, 466 A.2d at 1259–60. The purpose of the amendment was threefold: (1) to relieve the appellate burden on the Law Court; (2) to provide an intermediate appellate body with expertise in workers' compensation; and (3) to have "consistent policy positions announced within the administrative agency itself before the issues are presented in litigated appeals to the Law Court." *Wilner Wood*, 466 A.2d at 1259–60.

▪ On January 1, 1993, the Commission and Appellate Division were replaced by a Workers' Compensation Board made up of representatives of labor and management. *Maine Workers' Compensation Act of 1992,* P.L.1991, ch. 885, § A–9; L.D. 2464, Statement of Fact (115th Legis.1991); Blue Ribbon Commission to Examine Alternatives to the Workers' Compensation System and to Make Recommendations Concerning Replacement of the Present System, Report to the Blue Ribbon Commission (August 31, 1992). The former Appellate Division was continued, under the auspices of the Board, until January 1, 1994, to resolve pending appeals. P.L.1991, ch. 885, § A–10(2). The new act provides two mechanisms for appellate review: (1) discretionary review by the Board in cases that, in the opinion of the hearing officer, "involve[ ] an issue that is of significance to the operation of the workers' compensation system," 39 M.R.S.A. § 320; and (2) discretionary review by the Law Court, arising from either a hearing officer decision or an appellate decision from a panel of the Board, 39–A M.R.S.A. § 322. The record of floor debates suggests that the purposes for the changes in appellate procedure were to reduce litigation and to promote efficiency and cost-savings in the system.[3]

▪ Mathieu contends that, because cases pending with the expiring Appellate Division on January 1, 1994, are to be treated as if a hearing officer requested review,[4] the Board is required to consider each pending appeal on the merits and may not summarily decline review.[5] Mathieu contends that the proviso

2. A case also could be reported directly to the Law Court pursuant to M.R.Civ.P. 72. 39 M.R.S.A. § 103–D (1989). *Tompkins v. Wade & Searway Constr. Corp.*, 612 A.2d 874, 875 (Me. 1992); *Wilner Wood*, 466 A.2d at 1260.

3. As one Senator remarked, the administrative changes brought about by Title 39–A were designed to "mov[e the system] from the judicial model to the administrative model which, hopefully, can shorten that time frame so that the emphasis can finally be on getting injured people back to work and avoiding accidents, instead of appeal after appeal after appeal and of someone finally getting their benefits." Legis.Rec. S–61 (3rd Spec.Sess.1992) (Statement of Sen. Kany). Legis.Rec. S–42 (3rd Spec.Sess.1992) (Statement of Sen. Collins); Legis.Rec. S–40–42 (3rd Spec. Sess.1992) (Statement of Sen. Gauvreau) (criticizing the removal of the former Commission and noting a desire among members of the Blue Ribbon Commission "to reduce litigation"). *See also Bowie v. Delta Airlines, Inc.*, 661 A.2d 1128, 1131, n. 2 ("A primary purpose for the enact-

ment of Title 39–A was to reduce workers' compensation costs to employers, generally, in order to attract employers to the state").

4. Section A–10 provides, in pertinent part, that:

[a]ny appeal from a decision of the former Workers' Compensation Commission filed prior to January 1, 1993 must be considered by former Commissioners acting as temporary hearing officers and serving as members of an Appellate Division panel. Appeals that have not been resolved prior to January 1, 1994 must be treated as if a hearing officer had requested review by the Workers' Compensation Board pursuant to the Maine Revised Statutes, Title 39–A, section 320.

P.L.1991, ch. 885, § A–10(2).

5. The Board's decision to decline appellate review in this case was made pursuant to section 320 of Title 39–A, that provides in pertinent part:

Within 5 days of issuing a decision, a hearing officer may request that the full board

in section 320, that provides the "hearing officer may request that the full board review a decision of the hearing officer if the decision involves an issue that is of significance to the operation of the workers' compensation system," suggests a mandatory duty to exercise individual case-by-case discretion. 39–A M.R.S.A. § 320. We disagree. The requirement that the decision must be "of significance to the operation of the workers' compensation system" is a limitation on circumstances in which the hearing officer may request review by the Board. This language does not suggest any limitation on the discretion of the Board to decline review, and the Board cannot grant review without the approval of a majority of its members. *Id.*

■ Furthermore, we find nothing in the statute or legislative history to suggest that the Board may not decline review for compelling administrative reasons. Unlike the former Commission, the newly appointed Board is made up of four representatives of labor and four representatives of management, serving as part-time members. 39–A M.R.S.A. § 151 (Supp.1994). The Legislature may have concluded that the necessarily informal nature of the Board decision-making may require that the Board be given broad authority to decline appellate review for administrative or other reasons unrelated to the importance of the issue or merits of the case.[6] The Board's decision to decline review in the 196 pending Appellate Division carryover cases is consistent with its "responsibility for the efficient and effective management of the board and its employees," 39–A M.R.S.A. § 152(1), its duty to adopt rules and procedures "to ensure the speedy, efficient, just and inexpensive disposition of all proceedings under this Act," 39–A M.R.S.A. § 152(2), its general obligation to "assume an active and forceful role in the administration of this Act to ensure that the system operates efficiently and with maximum benefit to both employers and employees," 39–A M.R.S.A. § 152(10), and its authority to exercise "all powers as are necessary to carry out its functions under the law," 39–A M.R.S.A. § 152(7).

■ Mathieu next contends that the retroactive denial of Appellate Division review constituted a denial of his right of access to the courts in violation of Article I, section 19 of the Maine Constitution.[7] Mathieu has a remedy under the Act, made a claim under the Act, and received compensation pursuant to the Act. He was denied an opportunity for appellate review at the *administrative* level. We see no constitutional infirmity under Article I, section 19 of the Maine Constitution.

■ Nor do we find a violation of constitutional due process or equal protection. Me. Const. art I, § 6–A. Mathieu relies primarily on *Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 875, 31 L.Ed.2d 36 (1972), in which the United States Supreme Court stated that "if a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review.... When an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause...." (Citations omitted). We addressed a similar argument in *Harold D. Smith & Sons, Inc. v. Finance Auth. of Maine,* 543 A.2d 814, 817 (Me.1988).

---

review a decision of the hearing officer if the decision involves an issue that is of significance to the operation of the workers' compensation system....

....

Upon the approval of a majority of the members of the board, the request for review *may* be granted....
39–A M.R.S.A. § 320 (Supp.1994) (emphasis added).

**6.** As one Senator remarked, "all of the decisions regarding workers' compensation are developed through consensus by the new board of directors we're creating.... It's the only way management and labor can come together in this era." Legis.Rec. S–60 (3rd Spec.Sess.1992) (Statement of Sen. Esty). *See also* Legis.Rec. S–42 (3rd Spec.Sess.1992) (Statement of Sen. Collins); Legis.Rec. H–39 (3rd Spec.Sess.1992) (Statement of Rep. Rand).

**7.** Art. I, § 19 of the Maine Constitution provides a right of redress for injuries. "Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay."

The plaintiff in that case contended that the denial of administrative appellate review in bond approval determinations to competitors aggrieved by the grant of an application was a denial of due process and equal protection. *Id.* We expressly declined "to extend to administrative proceedings the Supreme Court's holding in *Lindsey,* ..." *Id.* We stated that

> [a]lthough administrative agencies are constitutionally required to adhere to the "fundamentals of fair play," [citations omitted] the courts have been reluctant to impose rigid procedural requirements upon administrative proceedings. The basic difference in "origin and function" of our judicial and administrative systems "preclude[s] wholesale transplantation of the rules of procedure trial and review which have evolved from the history and experience of the courts" to the administrative process, and administrative agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties".

*Id.* (quoting *In re Clean Fuels, Inc.,* 310 A.2d 736, 746 (Me.1973)). We concluded that the administrative bond approval procedure was not fundamentally unfair and stated that even if the appellant were given review to the full board, he would not have been allowed to present new evidence nor would the extra layer of review affect an appeal to the court, which would be based solely on the decision and record of the original hearing. *Id.* at 817–18. *See also Magnesium Casting Co. v. N.L.R.B.,* 401 U.S. 137, 139–42, 91 S.Ct. 599, 600–01, 27 L.Ed.2d 735 (1970) ("[T]he fact that the [National Labor Relations] Board has only discretionary review of the determination of the regional director creates no possibility of infirmity within the

range of our imagination"); I C.H. Koch, *Admin.Law & Prac.,* § 7.30, at 590 (West. 1995) (no inherent right to administrative review).

Discretionary review by the Law Court without an automatic right to an administrative appeal satisfies the requirements of due process. As in the case of bond approval proceedings, judicial review of workers' compensation decisions is based on the decision and the record of the original hearing. The removal of administrative appellate review does not significantly impair the ability of a party to appeal an adverse decision to a court.[8] *Harold D. Smith,* 543 A.2d at 817–18.

There is no constitutional infirmity in the statutory procedure affecting the transition between the old and new workers' compensation systems. *See Carroll v. Gates Formed Fibre Prods.,* 663 A.2d 23, 25 (Me. 1995) (an injured employee has no "vested right" to Appellate Division review). As we have stated, the "retroactive aspects of economic legislation meet the requirements of the due process clause if enacted to further a legitimate legislative purpose by rational means." *Tompkins,* 612 A.2d at 877. Furthermore, because there is no fundamental right to administrative appellate review and because Mathieu does not belong to a "suspect class," the challenged classification for purposes of the equal protection clause "need only be 'rationally related to a legitimate state interest.'" *Berry v. H.R. Beal & Sons,* 649 A.2d 1101, 1102 (Me.1994) (citations omitted). We will defer to the Legislature on the issue of "[w]hether a particular enactment is the best way to achieve [a] desired result," *Id.,* and will uphold a legislative classification "if facts may be reasonably conceived to justify the distinction," *Dishon v. Maine State Retirement Sys.,* 569 A.2d 1216, 1217 (Me.

8. Under common law, a party aggrieved by an administrative decision could only obtain judicial review by writ of certiorari, which by its nature was discretionary. *Lewiston, Greene & Monmouth Tel. Co. v. New England Tel & Tel Co.,* 299 A.2d 895, 902–03 (Me.1973); *Inhabitants of Town of No. Berwick v. State Bd. of Educ.,* 227 A.2d 462, 467, 471 (Me.1967). *See also Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 331 A.2d 55, 65 (1975); *State ex rel. First Nat'l Bank v. M & I Peoples Bank of Coloma,* 82 Wis.2d 529,

263 N.W.2d 196, 203, n. 10 (1978). The former method of obtaining judicial review by writ of certiorari was abolished by Rule 81(c) of the Maine Rules of Civil Procedure (effective December 31, 1967), that provides "[r]eview of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, shall be in accordance with procedure prescribed by Rule 80B." *Warchalowski v. Brown,* 417 A.2d 425, 429 (Me. 1980).

1990) (quoting *McNicholas v. York Beach Village Corp.*, 394 A.2d 264, 269 (Me.1978)).

The Legislature reasonably may have concluded that the administrative difficulties inherent in making the transition from a Workers' Compensation "Commission" to a "Board" required that there be a cut-off point at which time the former Appellate Division could no longer continue hearing appeals. Because it would have been "rational" and would have served a "legitimate governmental function" to have simply terminated the Appellate Division on the effective date of the new Act, January 1, 1993, it does not contaminate that rationality to add a one-year "grace period" to resolve pending appeals. *See State v. National Advertising Co.*, 387 A.2d 745, 751 (Me.1978) (The state "has a valid interest in 'preserving the fiscal integrity of its programs'" (citations omitted)). It also was not arbitrary or capricious for the newly created Board to decide that the administrative difficulties in individually reviewing 196 appeals on the merits rendered such review impossible. *See e.g., Harold D. Smith*, 543 A.2d at 818 (an administrative agency is free to delegate adjudicative authority to a subordinate officer when the statute provides).

The entry is:

Decisions of the Workers' Compensation Commission and the Workers' Compensation Board are affirmed.

All concurring.