1999 ME 99

**DAVRIC MAINE CORPORATION, et al.**

v.

**MAINE HARNESS RACING COMMISSION, et al.**

Supreme Judicial Court of Maine.

Argued May 3, 1999.
Decided June 29, 1999.

Edward S. MacColl, (orally), Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., Portland, (for Davric Maine Corp.), Daniel R. Warren, (orally), Jones & Warren, PA, Scarborough, (for Maine Alliance of Harness Horsemen), for plaintiffs.

Andrew Ketterer, Attorney General, Susan Sapraco, Asst. Atty. Gen., (orally), Patrick M. Downey, Special Asst. Atty. Gen., Augusta, (for Maine Harness Racing Commission), Craig J. Rancourt, (orally), Biddeford, (for Maine Harness Horsemen's Association), for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Davric Maine Corporation, the owner and operator of Scarborough Downs racetrack, and the Maine Alliance of Harness Horsemen and Women appeal from the judgment of the Superior Court (Cumberland County, *Brennan, J.*) affirming a decision of the Maine Harness Racing Commission. Plaintiffs argue that the court erred in failing to vacate the Commission's certification of election results selecting the Maine Harness Horsemen's Association (MHHA) as the exclusive bargaining agent for harness horse owners, trainers, and drivers at Scarborough Downs. Finding no error, we affirm the judgment.

[¶ 2] Maine's harness racing law requires the Commission to conduct and certify elections biannually to determine "the exclusive bargaining agent to represent licensed harness horse owners, trainers and drivers at each racetrack within that rac-

ing segment." 8 M.R.S.A. § 285–A(2) (Supp.1998). Specifically, the statute sets forth the following requirements for the election procedure:

> During each January preceding such an election, the commission, in consultation with the racetracks within each racing segment and in consultation with the existing representatives of licensed harness horse owners, trainers and drivers within that racing segment shall prepare a list of eligible voters within each racing segment. During February of each year for which elections are to be held, the commission shall prepare and forward to each eligible voter within each racing segment a ballot for the election of the exclusive bargaining agent within that racing segment. The ballot must include the name of any incorporated entity that during the preceding January has requested in writing to have its name included on the ballot for that racing segment. Eligible voters for each racing segment are entitled to vote in the election held for that racing segment either by returning the commission's official mailed ballot to the commission no later than the following February 28th or by appearing and voting in person, by secret ballot, at the public polling conducted pursuant to subsection 3.

*Id.*

[¶ 3] In December 1997 and January 1998, both the Alliance and the MHHA informed the Commission that they wished to be candidates in the Scarborough Downs segment of the elections. A ballot was printed by the Commission's staff and mailed to eligible voters in February 1998, incorrectly identifying the Alliance as the "Maine Alliance Horsemen's Association." The Alliance requested immediate corrective measures.

[¶ 4] The Commission subsequently created and mailed a second ballot, correctly identifying the Alliance. The second ballot instructed:

> PLEASE DESTROY THE BALLOT MAILED ON FEBRUARY 11, 1998. USE ONLY THE ENCLOSED BALLOT FOR VOTING IN THE SCARBOROUGH DOWNS SEGMENT. THOSE BALLOTS RECEIVED FOR THE SCARBOROUGH DOWNS BARGAINING AGENT SEGMENT WITH THE INCORRECT ORGANIZATIONS NAMES WILL BE DESTROYED. YOU MUST PRINT AND SIGN YOUR NAME ON THE BACK OF THE SELF ADDRESSED STAMPED ENVELOPE. FAILURE TO DO THIS WILL INVALIDATE YOUR BALLOT.

The ballot instructions stated that the deadline for receipt of ballots returned by mail was March 4, 1998, at 5:00 pm. In conjunction with the ballot mailing and pursuant to the statute, the Commission also conducted public polling, allowing all eligible voters to cast ballots in person at Scarborough Downs on March 7.

[¶ 5] All ballots received by mail by the March 4 deadline and all ballots cast in person on March 7 were tallied with the following results, as recorded in a memorandum generated by the Commission staff:

> 210 acceptable votes were counted. The vote was 113 for the Maine Harness Horsemen's Association. The vote was 97 for the Maine Alliance for Horsemen and Horsewomen.
>
> 233 votes were cast and 23 were disallowed in the following breakdown.
>
> 15 were not identifiable
>
> 2 arrived after 5:00 p.m. on March 4, 1998 at the Commission Office.
>
> 2 were handed to Henry ... before the poles on March 7, 1998
>
> 2 had sticker labels
>
> 2 had Nancy Simpson's name on the envelopes

[¶ 6] As stated in its printed agenda, the Commission planned to certify the election results at its April 2 meeting. Although no recording was made of that portion of the meeting pertaining to the

certification of the election results, the Commission certified the MHHA as the winner of the election. Plaintiffs appealed to the Superior Court from the Commission's certification of the election pursuant to M.R. Civ. P. 80C. The Superior Court affirmed and plaintiffs now appeal to this Court.

[¶ 7] When the Superior Court acts as an intermediate appellate court and receives no additional evidence, we review directly the record developed before the administrative agency. *See Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n*, 593 A.2d 663, 664 (Me. 1991). "The standard of review is 'limited to whether the [governmental agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record.'" *Id.* (quoting *Robinson v. Board of Trustees of the Maine State Retirement Sys.*, 523 A.2d 1376, 1378 (Me.1987)). The administrative agency's "interpretation of a statute administered by it, while not conclusive or binding on this court, will be given great deference and should be upheld unless the statute plainly compels a contrary result." *Town of Madison v. Public Utils. Comm'n*, 682 A.2d 231, 234 (Me.1996).

[¶ 8] Plaintiffs initially argue that the Commission's failure to tape record its meeting was an error that required the case to be remanded. Plaintiffs further contend that even if the Commission did not err by failing to tape record the meeting, the record was insufficient for judicial review and the court should have remanded the case to the Commission for further proceedings, pursuant to 5 M.R.S.A. § 11006(1)(D) (1989).

[¶ 9] The Administrative Procedures Act requires an agency to record any hearing in an "adjudicatory proceeding." 5 M.R.S.A. § 9059(2) (1989). The APA defines "adjudicatory proceeding" as "any proceeding before an agency in which the legal rights, duties or privileges of specific persons are required by constitutional law or statute to be determined after an opportunity for hearing." 5 M.R.S.A. § 8002(1) (1989).

[¶ 10] The harness racing statute provides the Commission with a simple rule for the certification of election results: "If one entity receives more than 50% of the total ballots cast under subsections 2 and 3 for election of an exclusive bargaining agent within a racing segment, that bargaining agent *shall be certified* by the commission as the exclusive bargaining agent within that segment." 8 M.R.S.A. § 285–A(4) (Supp.1998) (emphasis added).[1] Although neither the APA nor the harness racing statute define "certify" or "certification," to "certify" is "[t]o confirm formally as true, accurate, or genuine, esp. in writing." *Webster's II: New Riverside University Dictionary* 245 (1984). "Certification" is generally defined as the "formal assertion in writing of some fact." *Black's Law Dictionary* 155 (6th ed.1991).

[¶ 11] The Commission meeting was not an "adjudicatory proceeding" because the certification was not the "determination of legal rights, duties or privileges" of a party required to be determined only "after an opportunity for fair hearing." It was simply the confirmation of the results of an election: the election itself defined the rights and duties of the candidates. Although the Commission allowed individuals to speak at the meeting, the Commission was not required to do so nor did it regard such statements as formal testimony. Because the Commission's certification was not an adjudicatory proceeding, it was not subject to the APA's hearing requirement. Moreover, the ballots, staff memorandum, and other documents in the administrative record provide a sufficient basis for judi-

---

1. In contrast to the statute's simple and direct mandate for the Commission to certify election results, the statute dictates a detailed process, more akin to an adjudicatory proceeding, for the Commission to follow when issuing a license to an off-track betting facility. *See* 8 M.R.S.A. § 275–D (1997 & Supp. 1998).

cial review of the certification. Therefore, the Superior Court did not err in declining to remand the case.

[¶ 12] Plaintiffs next argue that irregularities in the election process violated the statute and deprived them of constitutional rights. First, plaintiffs contend that the Commission violated the statute by scheduling the public polling at Scarborough Downs in March 1998. The statute specifies that the election be held at each racetrack "on one of the first 3 live race dates assigned to the track within the calendar year," 8 M.R.S.A. § 285–A(3), yet the first three dates at Scarborough Downs in 1998 were in January. Similarly, plaintiffs argue that the Commission violated the statute by counting all mailed ballots received by 5:00 pm on March 4 despite the statute's requirement that mailed ballots be received by February 28.

[¶ 13] The harness racing statute provides no mechanism for responding to logistical difficulties in the election process nor does it specify a remedy for deviations from the election schedule set forth in the statute. We have declined to "create a remedy or penalty when a statute is silent regarding the sanction for failure of an agency to timely act." *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 590 (Me.1996) (holding that we did not have the power to penalize Workers' Compensation Board for issuing provisional order after the twenty-one day deadline established by statute). Further, "statutory provisions requiring an act to be done within a certain time are directory and not mandatory or jurisdictional unless the statute manifests a clear intent to the contrary." *Anderson v. Commissioner of the Dep't of Human Servs.,* 489 A.2d 1094, 1099 (Me.1985).

[¶ 14] The harness racing statute anticipates that the election will be held in February, as evinced by its explanation that candidates can request inclusion on the ballot throughout January and its ex-

hortation that ballots should be mailed in February. *See* 8 M.R.S.A. § 285–A(2). The statute manifests no intention that the Commission is deprived of any means of reasonably responding to logistical difficulties in conducting the election. It is not for us to create a sanction where none is expressed or implied.

[¶ 15] Second, plaintiffs argue that by disclosing the identity of voters who had submitted ballots to the MHHA, by misnaming the Alliance on the original ballots, and by deviating from the election schedule, the Commission violated the Alliance's constitutional right to equal protection.[2] "'The prohibition against denial of equal protection of the law to any person is implicated only when action by the state results in treatment of that person [that is] different than that given similarly situated individuals.'" *Nugent v. Town of Camden,* 1998 ME 92, ¶ 15, 710 A.2d 245, 249 (quoting *Wellman v. Department of Human Servs.,* 574 A.2d 879, 883 (Me.1990)). In this case, the misidentification of the Alliance on the original ballot was rectified at the Alliance's request, the list of voters' identities was made available to the Alliance on the day of its request and potentially only twenty-four hours after the list was provided to the MHHA, and any irregularities in the election procedure have not been shown to have benefitted the MHHA. The Alliance has not demonstrated that the Commission treated it any differently than the other candidate, and further, has not established that, even if such disparate treatment occurred, it was arbitrary or irrationally discriminatory. *See Beaulieu v. City of Lewiston,* 440 A.2d 334, 338 (Me.1982) ("The party challenging the classification bears the burden of demonstrating by clear and irrefutable evidence its arbitrariness and irrationally discriminatory nature.").

[¶ 16] Third, plaintiffs contend that the Commission unlawfully dele-

2. The denial of equal protection is prohibited by the Maine Constitution, article 1, section 6–A, and the United States Constitution, amendment XIV, section 1.

gated its authority to its staff members in conducting the election and tallying the ballots and that the Commission members had a duty to personally review the disputed ballots. The harness racing statute authorizes the Commission to "employ such personnel as it considers necessary to provide adequate oversight and enforcement and to carry out the purposes of this chapter." 8 M.R.S.A. § 264 (Supp.1998). Moreover, the statute delineates responsibilities of the Commission's executive director under the umbrella task of the "management of the work of the commission." *See* 8 M.R.S.A. § 263–A (Supp. 1998). As we have stated, "[w]here the statutory provisions enacted by the Legislature so provide, an administrative agency is free to delegate its powers to a subordinate officer." *Harold D. Smith & Sons, Inc. v. Finance Auth. of Maine*, 543 A.2d 814, 818 (Me.1988) (upholding legality of the Finance Authority of Maine's delegation of authority to issue certificates of approval when the governing statute authorized the Authority to employ a staff and delegate its powers). Furthermore, "the officer who has the ultimate authority to render a decision need not hear or read all the evidence prior to reaching his decision." *Id.* "As long as the officer both familiarizes himself with the evidence sufficient to assure himself that all statutory criteria have been satisfied and retains the ultimate authority to render the decision, he can properly utilize subordinate officers to gather evidence and make preliminary reports." *Id.*

[¶ 17] Plaintiffs have failed to establish that the Commission improperly delegated the task of coordinating the election and reporting the results. In any event, it is undisputed that fifteen ballots were disallowed because they were unidentifiable due to the lack of a signature on the envelope. Even if the Commission's staff erred in invalidating eight other votes for various reasons, the result would not have been altered because the MHHA won the election by more than eight votes.

[¶ 18] Fourth, plaintiffs argue that the MHHA did not receive more than fifty percent of the votes "cast" because 233 ballots were cast in total but the MHHA received only 113 votes. The term "cast" is not defined in the statute and "[i]n construing a statutory term that is undefined in the statute itself, our primarily obligation is to determine its plain meaning." *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 533 (Me. 1996). The statute's mandate that the entity receiving more than fifty percent of the total ballots "cast" cannot plausibly be interpreted to include valid as well as invalid ballots. The MHHA received 113 of the 210 valid votes; thus it received more than 50% of the total ballots cast and the Commission properly certified the MHHA as the election winner.

The entry is:

Judgment affirmed.