STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

NOV 15 2001

RECEIVED AND FILED
Susan Gaillette, Clerk

STATE OF MAINE
KNOX, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-002

ALFRED ZACHARIAS, ET AL,

Petitioners

v.

DECISION AND ORDER

DEPARTMENT OF MARINE RESOURCES,

Respondent

This matter is before the court on the appeal of the petitioners Alfred Zacharias and Charles Dubak from an adverse decision of the respondent State of Maine Department of Marine Resources ("DMR") approving a limited-purpose aquaculture lease in favor of Timothy Dowling in Otis Cove in the St. Georges River, St.George, Maine ("lease site").[1]  The petitioners challenge DMR's findings and decision that the proposed lease will not unreasonably interfere with the ingress and egress of riparian owners, navigation, or fishing or other uses of the area.  12 M.R.S.A. § 6072(7-A)(A), (B) & (C).

## I. BACKGROUND

The petitioners each own property on the mainland surrounding Otis Cove and Mr. Dubak owns Ten Pound Island, which is just off the mainland. The lease site is situated off of the southwest coast of Ten Pound Island.

---

[1] The lease approval allows Dowling to cultivate oysters and hard-shell clams for a period of three years.

## DISCUSSION

When reviewing administrative agency decisions, the court must uphold the agency's findings of fact if supported by substantial evidence on the record as a whole. *MacDougall v. Department of Human Services*, 2001 ME 64, ¶ 6, 769 A.2d 829, 831. Even if there is evidence that would support a contrary result, the findings should be upheld if not clearly erroneous. *Harold D. Smith & Sons, Inc. v. Finance Authority of Maine*, 543 A.2d 814, 816-17 (Me. 1988).

### A. Ingress/Egress

Mr. Dubak testified that, if the proposed lease is allowed, he will be prevented from maintaining a mooring in front of his home or installing a new dock, that his view will be obstructed by buoys and other aquaculture infrastructure, and that his property value will be adversely impacted. However, there is other evidence in the record to support DMR's findings that the proposed aquaculture activities will not unreasonably interfere with the ingress and egress of riparian owners. The proposed lease site is 112 feet from the western shore of Ten Pound Island. R. Doc. 37; Mr. Dubak accesses the island by dinghy at the island's southern end, opposite the proposed lease site, R. at 44; the distance between the proposed site and the island leaves ample passage between the two for someone operating a skiff, R. at 31; boats can pass between the proposed site and an another existing lease site, *Id.*; and the distance between the southeast corner of the proposed site (closest to shore) and the shore is about 686 feet, R. Doc. 37.

Mr. Dubak testified to his concern that a vessel with a four foot draft

2

might not be able to pass between the lease site and his haul-out, mooring and his proposed dock area. However, he has a mooring located between the east side of Ten Pound Island and the mainland shore, about 400-500 feet away from the proposed site. R. at 45-46; R. Docs. 37-39. Mr. Zacharias, who also has a mooring 400-500 feet from the proposed lease site, testified that the site does not threaten his resources because it is in a place that is innocuous and does not interfere with access to or navigation from his mooring. R. at 49-50. Another riparian owner, not a party to the litigation, testified that the lease site did not pose an access problem for him. R. at 58.

On this record, the court concludes that there is substantial evidence from which DMR could conclude that the proposed lease does not unreasonably interfere with the ingress and egress of riparian owners, including Mr. Dubak's access to Ten Pound Island from his mainland property.

B.    Navigation, Fishing and Other Uses

The petitioners argue that there is evidence that the lease will unreasonably interfere with navigation and with fishing or other uses of the area. They point to testimony that the proposed lease would preclude "normal ingress" and that anchorage around Ten Pound Island would be made inaccessible. They also point to other evidence that Otis Cove is a popular boating haven and provides excellent mooring due to its unique soft bottom, that there is potential danger to boaters from the netting of the aquaculture activities, and that boaters would have a difficult time seeing the

3

lease area at night even if it is marked with colorful bags. Transcript at pp. 26, 61.

However, there is also contrary evidence that the lease site is out of the way of lobster fishermen and navigational traffic, R. at 4, 25; that the site will be marked on navigational charts, R. at 26-27; that only a limited portion of the site would use surface gear, the remainder would have at least 14 feet of clearance between the surface and the gear, R. at 46; R. Doc. 47; and a former harbormaster indicated that there was plenty of room for moorings and that the moorings were located on the other side of the cove. R. Doc. 7. There is also a memo from a DMR patrol officer concluding that of the many local uses of the area (duck hunting, lobstering, recreational fishing, and clam digging) the proposed site would only affect lobstering, which is limited in this area. R. Doc. 7. The record evidence also indicates that there is sufficient space between the proposed site and Ten Pound Island (112 feet) and between the site and the nearest point of an existing lease (166.9 feet) to allow passage on either side of the proposed site. R. at 31; R. Doc. 37.

Harbormaster Dave Schmanska testified that a sailing vessel would have difficulty passing between the proposed site and Ten Pound Island. However, both Mr. Zacharias and his wife testified that the proposed site would have no impact on their navigational uses. R. at 50, 60-61, 65-66. In fact, Mr. Zacharias seemed to be more concerned that continued granting of such leases would eventually threaten his resources. R. at 48-50. Similarly, Mr. Dubak's concern appeared to be less about the proposed lease and more

4

about DMR's administrative process which he felt denied him an opportunity to speak about a prior lease application. R. at 42. He questioned whether this process was being used as a stepping stone for other such leases. *Id.*

Finally, although there was testimony presented in opposition to the lease concerning the popularity of Otis Cove as an uncharted transient storm anchorage due its sandy sediment bottom, there was also evidence that this characteristic is pervasive in the cove. R. at 54-55, 61; R. Doc. 39. Accordingly, there was sufficient evidence from which DMR could conclude that transient anchorage space could co-exist in the cove with the lease site.

## III. DECISION

Based upon all of the foregoing, the court cannot conclude that DMR's factual findings: (1) violate any constitutional or statutory provisions; (2) exceed the agency's statutory authority; (3) are based upon any unlawful procedure; (4) are affected by bias or error of law; (5) are unsupported by substantial evidence on the whole record; or (6) are arbitrary or capricious or characterized by abuse of discretion. *Munjoy Sporting & Athletic Club v. Dow*, 2000 ME 141, ¶ 6, 755 A.2d 531, 536.

Accordingly, pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry shall be as follows:

> The decision of the respondent Department of Marine
> Resources is AFFIRMED.

Dated: November 13, 2001

_____
Justice, Superior Court

5