STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, SS                          CIVIL ACTION
                                        Docket No.: CUMSC-AP-16-45

                                    )
ERIC MAURIELLO,                     )
                                    )
                Petitioner,         )
                                    )
    v.                              )
                                    )        STATE OF MAINE
                                    )    Cumberland, ss. Clerk's Office
                                    )
STATE OF MAINE, DEPARTMENT          )         JUL 13 2017
OF THE SECRETARY OF STATE,          )          3:05PM
BUREAU OF MOTOR VEHICLES,           )         RECEIVED
                                    )
                Respondent.         )

## DECISION AND JUDGMENT ON APPEAL
## PURSUANT TO M.R. CIV. P. 80C

In this appeal from administrative agency action under Rule 80C, Maine Rules of Civil Procedure, Petitioner Eric Mauriello argues the Respondent State of Maine, Department of the Secretary of State, Bureau of Motor Vehicles, erred in suspending his driver's license for operating with an excessive alcohol level pursuant to 29-A M.R.S. § 2453.

Petitioner asks the court to overturn the suspension because the hearing officer never made an affirmative finding of probable cause and because Petitioner's due process rights were violated by the law enforcement officer's delay in summonsing Petitioner for operating under the influence.

Oral argument was held July 12, 2017.

For the reasons discussed below, the court denies Petitioner's M.R. Civ. P. 80C appeal and affirms the decision of the hearing officer.

### I. Factual Background

The record before the hearing officer reveals the following facts not to be in dispute for purposes of this appeal:

On August 3, 2016 at about 3:00 a.m., Maine State Police Trooper Justin Huntley was traveling northbound on the Maine Turnpike near Exit 45. (R. Tab 6 p. 2.) Trooper Huntley observed a black Subaru Forester travelling at approximately 32 to 35 miles per hour in the 60 mile per hour zone. (*Id.*) The Subaru was driving in the right lane and had its passenger side turn signal on. (*Id.*) Trooper Huntley followed the car and saw it weave into the other lane. (*Id.*) He then activated his cruiser's blue lights and executed a traffic stop of the vehicle. (*Id.*)

When Trooper Huntley approached the stopped vehicle, he saw that Petitioner was the driver and sole occupant. (*Id.*) The trooper told Petitioner the reason for the traffic stop and asked for his license, registration, and proof of insurance. (*Id.*) Trooper Huntley could smell a faint odor of alcohol coming from Petitioner and saw that his eyes were glassy. (*Id.*) Petitioner admitted that he had consumed a couple of drinks earlier in the evening and subsequently explained they were shots people would buy for him and his band as they performed. (*Id.* at 2-3.)

The trooper asked Petitioner to get out of the car and perform field sobriety tests. (*Id.*) As a result of administering the horizontal gaze nystagmus (HGN) test to Petitioner, Trooper Huntley detected several clues, including a lack of smooth pursuit in each eye and a sustained and distinct nystagmus in each eye at maximum deviation. (*Id.* at p. 3.) Trooper Huntley then administered the walk-and-turn and one-legged-stand tests, and noted further signs that Petitioner was impaired due to his consumption of alcoholic beverages, including an improper turn and the use of arms to maintain balance. (*Id.*) The trooper placed Petitioner under arrest for operating under the influence (OUI) and transported him to the police station for an Intoxilyzer test of Petitioner's alcohol level. (*Id.*)

Trooper Huntley—a certified Intoxilyzer operator—conducted the test, which indicated Petitioner's breath alcohol level ("BAC") was .08 grams of alcohol per 210 liters of breath. (*Id.*;

2

R. Tab 7.) After completing the Intoxilyzer test, Trooper Huntley drove Petitioner home without issuing a summons to Petitioner. (R. Tab 5 p. 19.) Trooper Huntley did not issue a summons because he mistakenly thought that the OUI statute only prohibits operation with a BAC of more than .08, and thus that Petitioner's .08 test result was not unlawful. (*Id.*) In fact, the OUI statute prohibits operation with a BAC of .08 or more. *See* 29-A M.R.S. § 2411(1-A)(A)(2).

Several hours later, after realizing his mistake, Trooper Huntley returned to Petitioner's residence and issued him a summons for OUI. (*Id.* at 20).

The Secretary of State received Trooper Huntley's report of the incident on August 12, 2016. (R. Tab p. 1.) As a result, the Secretary of State's office mailed a notice of suspension and opportunity for hearing to Petitioner on September 15, 2016. (R. Tab. 8 pp. 1-2.) The Notice informed Petitioner that his license had been administratively suspended for 150 days due to "ADMINISTRATIVE ACTION—OPER WITH BAC .08 OR MORE" on August 3, 0216 (R. Tab 8 p. 1.)

Petitioner, through counsel, requested a hearing that was held on October 12, 2016. (*Id.* at p. 3; R. Tab 5.) The Notice of Hearing explained that the issues were whether, by a preponderance of the evidence:

1. There was probable cause to believe that you were operating a motor vehicle with an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.
2. You operated a motor vehicle with an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.

(R. Tab 8 p. 5.)

Trooper Huntley testified at the hearing, but Petitioner did not. (R. Tab 5.) At the close of evidence, the hearing officer stated that the present proceeding is analogous to "what in another context might be called strict liability...drunk driving." (*Id.* at p. 24.) He then

3

explained that while the case is "painfully on the line, it is on the line, and that's the regime the State has set up." (*Id.*) Accordingly, the hearing officer orally denied Petitioner's appeal to rescind the license suspension. (*Id.* at p. 25.)

## II. *Analysis*

When the Superior Court considers an appeal, the court reviews whether the hearing officer abused his or her discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Davric Maine Corp. v. Maine Harness Racing Comm'n,* 1999 ME 99, ¶ 7, 732 A.2d 289. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the resulting conclusion." *Lewiston Daily Sun v. Maine Unemployment Ins. Comm'n,* 1999 Me 90, ¶ 7, 733 A.2d 344 (citation omitted). "The burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n.,* 450 A.2d 475, 479 (Me. 1982) (citation omitted).

A. The Issue of Probable Cause to Believe Petitioner Operated with an Excessive Alcohol Level

Petitioner argues the hearing officer's decision must be reversed because the hearing officer did not state that he found probable cause to believe that Petitioner operated a motor vehicle with an excessive alcohol level. Petitioner also appears to contend that, even had the hearing officer made an explicit finding of probable cause, the record does not support such a finding.

Petitioner also argues that Trooper Huntley's decision not to issue a summons and driving Petitioner home after the test indicates the officer with the most knowledge of the case did not find probable cause to believe that Petitioner was operating the vehicle with an excessive alcohol level.

4

Respondent counters that even though the hearing officer did not expressly state there was probable cause to believe Petitioner was operating under the influence, probable cause existed, and this determination was implicit in the hearing officer's decision.

The governing statute, 29-A M.R.S. § 2453, provides in pertinent part:

2. Definition. For the purposes of this section, "operating a motor vehicle with an excessive alcohol level" means operating a motor vehicle with an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.

...

8. Hearing. The scope of the hearing must include whether:
   A. The person operated a motor vehicle with an excessive alcohol level; and
   B. **There was probable cause to believe that the person was operating a motor vehicle with an excessive alcohol level.**

29-A M.R.S. § 2453 (emphasis added).

In the absence of a request for specific findings of fact, the court will affirm an agency's decision if it is supportable on the basis of an implicit finding. *See Davric Me. Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 9, 751 A.2d 1024 (discussing an agency's implicit conclusion); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1029-30 (Me. 1982) (upholding agency finding because record implicitly supported such a finding even though no express finding existed).

Here, the hearing officer began the hearing by noting that the issues for hearing were as listed in the Notice of Hearing. (R. Tab 5, at p. 3). The Notice of Hearing sent to Petitioner's attorney as well as the Notice of Hearing sent to Trooper Huntley were admitted as hearing exhibit 3, (*id.* pp. 22-23), and appear at tab 9 of the record. Both notices state the issues as being whether Petitioner operated a motor vehicle with an excessive alcohol level, and whether there was probable cause to believe that he did so.

The record contains ample evidence supporting a determination that there was, in fact, probable cause to believe Petitioner was operating his motor vehicle with an excessive alcohol

level.    The evidence establishing probable cause includes the speed at which Trooper Huntley observed Petitioner driving on the highway, the weaving of Petitioner's vehicle, Petitioner's failure to turn off the passenger-side turn signal while travelling in the right lane, the smell of alcohol Trooper Huntley detected on Petitioner's breath, Petitioner's admission that he had drunk several shots earlier in the night, and the signs of impairment revealed during the field sobriety tests.

Moreover, contrary to Petitioner's argument, Trooper Huntley's decision not to issue a summons for OUI at the police station does not indicate a lack of probable cause.  In fact, the trooper could not have arrested Petitioner for OUI unless he believed, based on his own observations and Petitioner's admissions, that there was probable cause to do so.

Because the hearing officer stated at the outset that the issues for hearing were as stated in the Notice, and because the Notice identifies probable cause as an issue, the decision to deny Petitioner's appeal of the administrative suspension must be deemed to include an implicit finding of probable cause.  Moreover, the evidence amply supports such a finding.  Petitioner has not shown a basis for overturning the decision.

### B. Whether the Delay in the Summons Violated Petitioner's Right to Due Process

Petitioner contends the suspension violates his due process rights because Trooper Huntley's delay in issuing the summons deprived him of the opportunity to obtain a blood test to refute the Intoxilyzer test result.

Respondent counters that Petitioner did not raise this argument at the hearing and therefore did not preserve it for appellate review. Respondent also argues that even if the argument was properly preserved, there is no evidence in the record indicating Petitioner would have sought to obtain a blood test had he been summonsed at the police station. Respondent further argues there was no evidence of when Petitioner could have obtained a

6

blood test or how a lapse of time would affect Petitioner's alcohol level. Finally, Respondent points out that, under the relevant statute of limitations, the trooper could have waited up to three years before issuing the summons. *See* 17-A M.R.S. § 8(2)(B),

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (quotation marks omitted). It is a flexible concept that "calls for such procedural protections as the particular situation demands." *Id.* at 334 (quotation marks omitted). To determine whether a party has received due process, three factors must be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re. A.M.*, 2012 ME 118, ¶ 15, 55 A.3d 463 (quoting *Matthews v. Eldridge*, 424 U.S. at 335).

"Generally, plaintiffs in a Rule 80C proceeding for review of final agency action are expected to raise any objections they have before the agency in order to preserve these issues for appeal. Issues not raised at the administrative level are deemed unpreserved for appellate review. This rule applies even to unpreserved issues implicating constitutional questions." *New England Whitewater Center, Inc. v. Dept. of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me. 1988) (citations omitted).

Here, Petitioner does not directly dispute that he did not properly preserve his due process argument at the administrative level. However, even if Petitioner had preserved the argument, however, the result would be the same.

The operative statute does not give an operator the right to have his or her alcohol level measured by means of a blood test instead of a breath test, *see* 29-A M.R.S. § 2521(2). Instead,

7

it provides that a breath test will be used unless the officer determines that a breath test is "unreasonable." *Id.*[1] Here, Trooper Huntley made no such determination, so Petitioner would have had to obtain a blood test on his own, had he indeed wanted one.

Because Petitioner did not testify at the hearing, there is no evidence that he would or could have gone somewhere in the pre-dawn hours to obtain a blood test, had the officer issued the summons at the police station. Thus, there is no evidence as to when a blood test would have been available, or what effect any delay in the administration of a blood test would have had on the Petitioner's alcohol level. In short, Petitioner's entire due process argument rests on speculation, not on evidence. It is not a basis for overturning the hearing officer's decision.

*III. Conclusion*

For the reasons discussed above, Petitioner's M.R. Civ. P. 80C appeal is denied. Judgment is hereby granted to Respondent, along with any recoverable court costs.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision and Judgment by reference in the docket.

Dated: July 13, 2017

_____
A.M. Horton, Justice

---

[1] Although the statute does not give the operator the right to opt out of a breath test in favor of a blood test, it does say, if the officer decides to use a blood test instead of a breath test, "the operator may choose a physician, if reasonably available." 29-A M.R.S. § 2521(2).

BENJAMIN CAMPO JR, ESQ
DOUGLAS MCDANIEL CAMPO & SCHOOLS
90 BRIDGE ST SUITE 100
WESTBROOK, ME 04092

DONALD MACOMBER, AAG
OFFICE OF THE ATTY GENERAL
6 STATE HOUSE STATION
AUGUSTA, ME 04333-0006

8