2001 ME 86

**Virginia GREEN**

v.

**COMMISSIONER OF THE DEPART-
MENT OF MENTAL HEALTH,
MENTAL RETARDATION AND
SUBSTANCE ABUSE SERVICES.**

Supreme Judicial Court of Maine.

Argued May 17, 2001.

Decided June 6, 2001.

Patricia Ender, Esq., (orally), Jack Comart, Esq., Pine Tree Legal Assistance, Inc., Augusta, for plaintiff.

G. Steven Rowe, Attorney General, Katherine Greason, Asst. Attorney General (orally), Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] Virginia Green appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) affirming the decision of the Commissioner of the Department of Mental Health, Mental Re-tardation and Substance Abuse Services that Green could be awakened at 8:00 A.M. without her informed consent. Green contends that waking her constitutes "treatment" or "services" that requires her informed consent, and that the Commissioner's decision-making process violated her constitutional right of due process. We disagree and affirm the judgment.

[¶ 2] Virginia Green was admitted to the Augusta Mental Health Institute (AMHI) in February of 1997. Green is an involuntary patient as a result of a judgment entered after a finding of not guilty by reason of insanity in the death of her mother. *See* 17–A M.R.S.A. § 39 (Supp. 2000); 15 M.R.S.A. § 103 (Supp.2000). She is diagnosed with bipolar disorder, for which she takes mood-stabilizing and antidepressive medications. Until recently, Green resided in the Stone North Middle unit of AMHI, where she was permitted to sleep until noon each day.

[¶ 3] In May of 2000, Green was involuntarily moved to the Stone North Upper (SNU) unit of AMHI, where the decision was made to awaken Green an hour earlier each week until she was awake at 8:00 A.M. each day. On May 28, 2000, Green filed a grievance with the Superintendent of AMHI requesting that she not be awakened before 11:00 A.M. each day. She argued, among other things, that waking her constituted treatment, which AMHI was not permitted to administer to her without her informed consent pursuant to the Rights of Recipients of Mental Health Services (Rights of Recipients).[1] The Superintendent denied Green's grievance.

---

1. The Rights of Recipients of Mental Health Services, a set of rules promulgated pursuant to the Maine Administrative Procedure Act, 34–B M.R.S.A. § 3003 (1988 & Pamph.2000), states:

Recipients have the right to refuse all or some of the services offered, subject to the exceptions noted below.... Only the following services may be imposed against a recipient's wishes:

[¶ 4] Green appealed the Superintendent's decision to the Commissioner of the Department of Mental Health, Mental Retardation and Substance Abuse Services. The Commissioner requested that a hearing officer conduct the hearing and provide a recommended decision. *See* 34–B M.R.S.A. § 1203(4) (Pamph.2000). Following a hearing, the hearing officer issued a recommended decision organized into three sections with capitalized headings: "STIPULATED FINDINGS," "FINDINGS OF FACT," and "REASONS FOR DECISION." The FINDINGS OF FACT section consisted primarily of the historical facts of the case, such as Green's diagnosis, her sleep-wake cycle, her transfer to SNU, and SNU's decision to wake Green at 8:00 A.M. In the REASONS FOR DECISION section, the hearing officer concluded that waking Green constituted treatment, to which Green did not consent, and recommended that the Commissioner find that SNU's plan to wake Green at 8:00 A.M. violated her rights and should cease. Both parties filed exceptions to the hearing officer's recommended decision.

[¶ 5] The Commissioner's final decision specifically adopted the FINDINGS OF FACT section issued by the hearing officer, but did *not* adopt the REASONS FOR DECISION section. Instead, the Commissioner adopted AMHI's interpretations of the regulations contained in its exceptions, which stated that waking Green did *not* constitute treatment or services, and

was instead intended (1) to give Green an opportunity to participate in such treatment to which she may consent, (2) to give the clinical staff a chance to observe Green, and (3) for smooth hospital operation. The Commissioner therefore denied the requested relief.

[¶ 6] Green then filed a petition for review of the Commissioner's decision pursuant to M.R. Civ. P. 80C along with independent claims for relief. Following a hearing, the court (*Marden, J.*) entered a judgment affirming the Commissioner's decision. Green then filed this appeal.

[¶ 7] The rules promulgated in the Rights of Recipients are the focus of this appeal. According to these rules, treatment of or services to a patient may be administered only if one of the following is true: (1) an emergency requires it, (2) the patient gives informed consent for the treatment, (3) AMHI proceeds with an administrative hearing to override a patient's refusal, (4) the service being administered is involuntary hospitalization, (5) the services rendered are forensic services, or (6) for those under guardianship, with the guardian's consent to the treatment. *See* Rights of Recipients of Mental Health Servs. §§ A.III.F, B.V.A (Jan. 1, 1995). The parties agree and have stipulated that none of these conditions has been satisfied here—no emergency requires that Green be awakened before 11:00 A.M., Green did not consent to being awakened before

1. Involuntary hospitalization . . .;
2. Forensic services . . . in a residential or hospital setting;
3. Services permitted under applicable law in the case of a person under guardianship, upon the guardian's informed consent and within the limits of the guardian's authority;
4. Emergency treatment in a residential or hospital setting during a psychiatric emergency, pursuant to procedures set out in these rules; or

5. Treatment in a residential or hospital setting pursuant to the administrative hearing provisions of these rules for individuals who lack capacity to consent to services.

Rights of Recipients of Mental Health Svcs. § A.III.F (Jan. 1, 1995). Furthermore, "Recipients have the right to informed consent for all treatment." Rights of Recipients of Mental Health Svcs. § B.V.A (Jan. 1, 1995).

11:00 A.M., AMHI has not sought an administrative hearing, the service at issue does not involve involuntary hospitalization or forensic services, and Green is not subject to guardianship.

[¶ 8] Rather, the dispute in this case is whether waking Green constitutes "treatment" or "services" within the meaning of the Rights of Recipients, and thus requires the existence of one of the foregoing conditions above before it can be administered. The parties agree that "services," although not specifically defined in the Rights of Recipients, is largely synonymous with "treatment," which is defined as, "any activity meant to prevent, ameliorate, prevent deterioration of, or cure a recipient's mental health problems or mental illness and includes behavioral, psychological, medical, social, psychosocial and rehabilitative methods that meet usual and customary standards in the field of mental health treatment." Rights of Recipients of Mental Health Servs. § A.II.P (Jan. 1, 1995).

▆▆▆ [¶ 9] Because the Superior Court acted in its appellate capacity, we directly review the decision of the administrative agency, in this case, the Commissioner. *See Davric Me. Corp. v. Me. Harness Racing Comm'n,* 1999 ME 99, ¶ 7, 732 A.2d 289, 293. The Commissioner's decision is reviewed for abuse of discretion, error of law, or findings not supported by substantial evidence in the record. *See id.* The factual findings of the Commissioner must be affirmed unless clearly erroneous. *See Imagineering, Inc. v. Superintendent of Ins.,* 593 A.2d 1050, 1053 (Me.1991). Furthermore, we defer to an agency in those areas within its expertise unless a statute or regulation compels a contrary result. *Id.* Matters involving the rights of recipients of mental health treatment are within the Commissioner's expertise, whose statutory duties include the "general supervision, management and control of

... employees and clients of all state institutions," and who "may perform any legal act relating to the care, custody, treatment, relief and improvement of the residents of state institutions ...." 34–B M.R.S.A. §§ 1203(1), 1204(1) (1988).

## I.

[¶ 10] Green first contends that AMHI's purpose in waking her at 8:00 A.M. is for treatment-related rather than institutional reasons such as scheduling and organization. She emphasizes the "meant to" language of the treatment definition, and contends that whether or not something is treatment depends on the intent or purpose in administering it. The hearing officer concluded that waking Green was "meant to prevent, ameliorate, prevent deterioration of, or cure the grievant's mental health problem," a finding Green argues may not be overturned unless clearly erroneous. The crux of Green's argument is that because the hearing officer found that waking Green was treatment, and because the Commissioner then adopted the hearing officer's findings of fact, the Commissioner erred in finding that waking Green was not treatment.

[¶ 11] We disagree. By the plain language of her written decision, the Commissioner adopted only the *historical* findings of fact contained under the FINDINGS OF FACT heading in the hearing officer's recommended decision rather than all the findings and conclusions found throughout the recommended decision. The Commissioner's decision states, "I adopt the Findings of Fact as contained in [the hearing officer's] Recommended Decision." The capitalization of "Findings of Fact" clearly indicates the Commissioner's intent to refer to the heading rather than to all findings of fact, which would not be capitalized. The hearing officer's conclusion that waking Green was for treatment rather

than institutional purposes was located in the REASONS FOR DECISION section, which the Commissioner did not adopt.

■ [¶ 12] It is the Commissioner's findings that are subject to review for clear error and not those of the hearing officer. *See Kelley v. Comm'r, Me. Dep't of Human Svcs.*, 591 A.2d 1300, 1303 (Me. 1991). As the unsuccessful party at the trial level, in order to disturb the Commissioner's findings, it is Green's burden to show *more* than that there was competent evidence to support her position; she has to demonstrate that there was *no competent evidence* to support those findings. *See Minot Sch. Comm. v. Minot Educ. Ass'n*, 1998 ME 211, ¶ 6, 717 A.2d 372, 375. There is ample evidence in the record to support the Commissioner's conclusion, that waking Green (1) gave her an opportunity to participate in treatment to which she consented, (2) gave the clinical staff a chance to observe Green, and (3) benefitted smooth hospital operation. This evidence included testimony regarding the schedule and morning routine at SNU. The hospital begins by waking all patients between 7:15 A.M. and 8:15 A.M. to go over their daily schedule and serve them breakfast. Medications are also dispensed at that time, and a morning meeting is held to orient patients to time and weather, to determine if any patient needs to see the medical doctor or social worker, to review the day's activities, to take questions, to remind patients of their appointments, and to see if any patient wants a privilege or day pass. Treatment groups

begin at 9:00 A.M., some of which Green has been encouraged, but not forced, to attend. The medical doctor also sees patients in the morning. Testimony further indicated that the purpose of waking Green was to provide her with the opportunity to participate in treatment that occurred prior to 11:00 A.M.

[¶ 13] We discern no error in the Commissioner's conclusion that creating an opportunity to receive treatment is *not* treatment itself. The authority to oversee management of AMHI, including providing the opportunity for treatment, is vested in the Commissioner, not in the patients. Green has no right to refuse AMHI's provision of the opportunity for treatment. That is AMHI's very mission. To conclude otherwise would mean that AMHI's every action, including the provision of shelter, light, and heat would constitute treatment, and would lead to an absurd result. Therefore, competent evidence exists to support the Commissioner's findings and we will not overturn them.

## II.

■ [¶ 14] Green also contends that the Commissioner violated her right of due process by making findings without hearing evidence. She argues that, pursuant to *Pelkey v. City of Presque Isle*, 577 A.2d 341 (Me.1990), only the hearing authority who heard the evidence presented and assessed the witnesses' credibility is permitted to make findings.[2] We disagree. The

2. In *Pelkey,* the plaintiff applied for a special exception permit from the Presque Isle Zoning Board of Appeals. *Pelkey,* 577 A.2d at 342. The Board denied his application, but issued no findings of facts to show the basis of its decision. *Id.* The plaintiff then filed a complaint in the Superior Court, which remanded the case to the Board for issuance of findings of fact. *Id.* at 342–43. The Board issued the required findings without further hearing or notice. *Id.* at 343. In the meantime, however, the composition of the Board had changed and therefore, three of the five members of the Board that issued the findings after remand had heard no evidence in association with the plaintiff's application. *Id.* We held that, "Procedural due process also assumes that Board findings will be made only by those members who have heard the evi-

holding of *Pelkey* is distinguishable from the present case because in *Pelkey,* members of the Board who had neither heard nor considered any evidence in association with the plaintiff's case issued findings of fact. In contrast, the Commissioner in this case considered the evidence and the submissions of the parties, as well as the findings and recommendations issued by the hearing officer, before issuing a decision.

[¶ 15] Although there is a liberty interest in refusing treatment, *Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990), that liberty interest is not implicated here because waking Green is not treatment. Furthermore, we have stated many times that due process does not require that the decision-maker in an administrative hearing hear or read all the testimony. *See, e.g., New England Tel. & Tel. Co. v. Pub. Utils. Comm'n,* 448 A.2d 272, 279 (Me.1982). "As long as the [decision-making] officer both familiarizes himself with the evidence sufficient to assure himself that all statutory criteria have been satisfied and retains the ultimate authority to render the decision, he can properly utilize subordinate officers to gather evidence and make preliminary reports." *Harold D. Smith & Sons, Inc. v. Fin. Auth. of Me.,* 543 A.2d 814, 818 (Me.1988). In fact, statutory authority specifically authorizes the use of hearing officers to make proposed findings. 5 M.R.S.A. § 9062(4) (1989). Furthermore, the Commissioner is permitted to "contract for the services of [a] hearing examiner or examiners, who shall conduct all adjudicatory proceedings pursuant to the Maine Administrative Procedure Act ...." 34–B M.R.S.A. § 1203(4) (Pamph.2000). No authority, however, binds the agency decision-maker to the findings contained in the hearing officer's report. The Commissioner's failure to adopt the recommended decision of the hearing officer was therefore not error.

The entry is:

Judgment affirmed.

dence and assessed the credibility of the various witnesses." *Id.*