STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, ss.                                 CIVIL ACTION
                                                  DOCKET NO. AP-08-06

RIVERWATCH, LLC,

          Petitioner

v.                                                DECISION AND ORDER

CITY OF AUBURN,

          Respondent

## BEFORE THE COURT

This matter comes before the court on Riverwatch, LLC's (Riverwatch) Rule 80B appeal from a decision of the City of Auburn Planning Board (the Board) approving on April 8, 2008 the applications for the Great Falls Plaza Subdivision.

## BACKGROUND AND PROCEDURAL HISTORY

Riverwatch owns a hotel abutting the property at issue in this dispute. The City of Auburn (the City) and two private organizations, GFP Development Co. LLC (GFP) and the Mullaney Hospitality Group (Mullaney), applied for Board approval with the objective of constructing the Great Falls Plaza on property located in the Central Business District (CBD) zone of downtown Auburn. The community has identified the redevelopment of Auburn's downtown as a priority in its Comprehensive Plan and specific community planning initiatives, notably Auburn's Downtown Action Plan for Tomorrow.[1]

---

[1] These community efforts previously enabled the development of the plaintiff Riverwatch's nearby hotel. Subsequent to the Riverwatch hotel approval, the City revised portions of its ordinance to remove some of the hurdles encountered during the Riverwatch development review process.

The proposed Great Falls Plaza project consists of a five-lot subdivision. Two lots were planned for initial development with a 100-room hotel with an 11,000 square-foot footprint and a four-level municipal parking garage with a capacity for approximately 330 vehicles. Three additional lots would be reserved for future development. The project includes construction of internal public and private roads, access points and other infrastructure improvements, and is estimated to have a construction cost of $ 17 million. Although the proposed hotel was a permitted use in the CBD, it required site plan review and special exception approval due to its size of more than 5,000 square feet.[2]

On February 8, 2008, GFP submitted two applications to the Board. One application was an amendment to an existing subdivision approval granted on April 19, 2007 for joint applicants GFP and the City. The second application was for a site plan review and special exception permit, with three joint applicants, the City, GFP and Mullaney. The site plan and special exception application were for the development of a parking garage by the City and a hotel by the privately held GFP and Mullaney. After hearing and discussion on March 11, 2008, the Board tabled the site review plan and special exception applications until the following meeting in order to give the developer an opportunity to provide further information. The Board reconsidered the two applications on April 8, 2008.

At the April 8 hearing, a board member who had participated in the March 11, 2008 hearing recused himself due to a conflict in interest and two members who had not been present on March 11 attended and participated in

_____

[2] Approval was also initially sought by the applicant under the Planned Unit Development (PUD) ordinance, although that designation was later withdrawn.

the deliberations. The minutes of the March 11 meeting were neither approved nor made a matter of public record prior to the April 8 hearing. The Planning Board approved the applications on April 8 and issued separate written findings relating to the site plan and special exception approvals, dated April 14, 2008, and for the subdivision amendment approval.

After hearing, the amendment subdivision plan was approved under Section 7.3 of Chapter 29 of the Auburn ordinance and approval was granted in one, rather than two, hearings. The site review and special exception applications were approved under sections 3.69B.2a, 3.62B.1.g and 3.62B.2.1 and 1 of Chapter 29 of the ordinance.

Riverwatch contends that the Board violated applicable provisions of law, abused its discretion and violated procedural due process. Although Riverwatch raises numerous arguments,[3] the court's analysis consolidates those arguments that ultimately involve the same issue, and disregards assertions that lack merit and do not warrant discussion.[4] The issues to be discussed and determined

---

[3] The petitioner's specific arguments follow: (1) failure to hold both a preliminary and final hearing for a major subdivision application, (2) approving the site review and special exception application without requiring or waiving required CBD setback and setback requirements, (3) failing to require the provision of enclosure or screening of roof-top mechanical equipment as required by the CBD, (4) failing to require the applicants provide a statement of financial capacity, (5) failing to require specific plans for the location, size, design and manner of illumination of signs for the proposed buildings, (6) failing to obtain a new Traffic Movement Permit, (7) failing to require compliance with dimensional requirements for loading zone, (8) failing to grant waiver for those dimensions, (9) improperly granting a waiver of requirement that loading zones not require backing of vehicles onto a public way, and (10) making a decision at a final hearing by members who did not attend or participate in the first hearing.

[4] Based on the record and city ordinance, the court does not find the petitioner's following arguments persuasive because they fail to present a requirement that was not satisfied: (1) the Board improperly failed to require the provision of enclosure or screening of roof-top mechanical equipment as required by the CBD; (2) the Board improperly failed to require specific plans for the signage for the proposed buildings; and (3) the Board improperly failed to obtain a new Traffic Movement Permit.

include: (1) whether the Board improperly failed to hold both a preliminary and final hearing for a major subdivision application; (2) whether the Board waived certain requirements for site plan approval; and (3) whether it was improper for the Board, comprised of members who did not participate in the first hearing, to make a decision at the final hearing.

## DISCUSSION

### I. Standard of Review

This court reviews a local board's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. Substantial evidence is evidence that is sufficient for a board to have reasonably found the facts as it did. *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990). The burden of persuasion is on the party challenging a board's decision to show that the evidence compels a different result. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (1996). The court must not substitute its judgment for that of a board on factual issues. *Id.* Further, a board's "decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Id.* However, if a board "fails to make sufficient and clear findings of fact and such findings are necessary for judicial review," this court must remand the matter back to the board for those findings. *Comeau v. Town of Kittery*, 2007 ME 76, ¶ 9, 926 A.2d 189, 192 (quoting *Carroll v. Town of Rockport*, 2003 ME 135, ¶ 30, 837 A.2d 148, 157). To the extent that an ordinance requires interpretation that is a question of law subject to *de novo* review. *Gensheimer v. Town of Phippsburg*, 2005 ME 22, 868 A. 2d 161, 166.

## II.    Failure to Hold a Preliminary and Final Hearing

Riverwatch contends that the Board failed to hold both a preliminary and final hearing for a major subdivision application. However, the Board was not considering a "major subdivision application." The Record discloses that the application was for an amendment to approved subdivision plan. The still-valid approval was granted for a Major Subdivision on April 10, 2007. The Board had before it an "Amended Final Subdivision Plan," as reflected on the application blueprint and acted upon by the Board. Rather than designate it a minor subdivision, for which it was qualified under the ordinance, the Board chose to call the amendment a major subdivision, but clearly waive any perceived requirement for another public hearing or additional process. The Board actually went beyond the ordinance requirements throughout the process in order to maximize public input without unduly stalling a minor amendment.

With respect to plan revisions after approval, the ordinance provides that "[n]o changes, erasures, modifications, or revisions shall be made in any final plan after approval has been given by the Planning Board and endorsed in writing on the plan, unless the plan is first resubmitted and Planning Department staff approves any modifications." § 7.3(E)(3). The ordinance required only the approval of the City's Planning Department staff. The Planning Department staff and Board's choice to hold a hearing to ensure public review was discretionary.

In this case, the staff found that the amendments to the final plan could have been approved through a staff approval process by the Planning Department under section 7.3(E)(3) without any action on the part of the

Planning Board. At the hearing, Eric Cousens, City Planner, quoted directly

from the staff report, stating:

> The ordinance also allows staff to review some changes to a subdivision. It was the opinion of the staff that the proposed changes could have been reviewed by staff; however given the City involvement as an applicant, co-applicant, and the public interest in the changes, it was deemed appropriate for the Planning Board to review the changes with the Board's public process.

Record 3, p. 19 lines 8-14.

At the hearing, the Board considered whether it could treat the

amendment as a final plan and hold the final vote that evening. The staff

advised the Board that if there were not any major requirements that the Board

needs to see on a new revised plan, they could proceed with the application as a

final approval. It was within the Board's discretion to make this determination.

Thus, the Board was not required to hold both a preliminary and a final hearing.

## III. Waiver

The parties disagree as to whether the Board properly waived three

requirements for site plan approval. First, the project does not satisfy the

requirement of a CBD setback for the front yard of the hotel, yet the Board did

not expressly state that it was waiving this requirement.[5] Second, Mullaney did

not provide the required statement of financial capability to carry out the project,

and the Board did not state that it was waiving this requirement.[6] Third, the City

argues that the Board waived dimensional requirements for the loading zone,

---

[5] For the front yard regulation, section 3.69(C)(3)(c) of the ordinance requires a minimum twenty foot setback or twenty percent of the average depth of the lot, whichever is less. The setback in question is less than seven feet.

[6] The record states that Mullaney provided this information, however, the only information submitted by Mullaney that is a part of the record is a brochure that does not contain any financial information.

while the petitioner contends that the Board failed to grant a waiver, and even if it had, waiver was not permitted.[7] The City argues that the Board's findings and waivers were implicit and should be inferred based on the Board's decision and the surrounding circumstances. Riverwatch counters that express findings and waivers are necessary and the court should remand to the Board for factual findings on these issues.

This court acknowledges that the body of precedent concerning the need for administrative boards to issue written findings is admittedly contradictory and perhaps confusing.[8] However, it is evident in the more recent decisions from the Law Court that proper judicial review of an administrative body's decision cannot be accomplished when there are inadequate factual findings to consider. *See e.g. Comeau v. Town of Kittery*, 2007 ME 76, ¶¶ 12-13, 926 A.2d 189, 192-93;

---

[7] The City claims that the Board waived some of the dimensional requirements found under section 4.1(A)(3)(B) of the ordinance, pertaining to "[b]uildings having a gross floor area of greater than 10,000 square feet: 50 foot length, 10 foot width." The Board does have the authority to waive dimensional requirements under § 7.1(D)(12). The petitioner argues that this was a substantive requirement, not a dimensional requirement, because the Board purported to waive the requirement that the loading zone be arranged so as to avoid the need for a vehicle to back onto the street. The record contains conflicting findings and it is not clear exactly what the Board was waiving in making its determination.

[8] For example, compare *Wells v. Portland Yacht Club*, 2001 ME 20, 771 A.2d 371 with *Carroll v. Town of Rockport*, 2003 ME 135, 837 A.2d 148. In the first case, the Law Court held that the record supported the Board's implicit findings. *Wells*, 2001 ME 20, ¶ 11, 771 A.2d at 375. However, in *Carroll*, the Court stressed the requirement of written factual findings for proper judicial review. 2003 ME 135, ¶¶ 26-30, 837 A.2d at 156-57. An explanation for this apparent inconsistency is that there is a certain class of cases for which explicit findings of fact are not needed for judicial review. *See Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 19, 769 A.2d 834, 840-41. As the Law Court has previously stated, "[i]n some cases the subsidiary facts may be obvious or easily inferred from the record and the general factual findings, and a remand would be unnecessary." *Id.* However, considering that 30-A M.R.S. § 2691(3)(E) requires all local boards to provide a statement of findings and conclusions, along with the reasons behind them, and given the Law Court's emphasis on the requirement of written findings in recent cases, the best practice for local boards would be to simply comply with the statute.

*Carroll v. Town of Rockport*, 2003 ME 135, ¶ 30, 837 A.2d 148, 157. The Law Court has specifically recognized that remand to a planning board is appropriate when the board has made no findings to allow the court to determine whether the board waived certain requirements for site plan approval. *See Kurlanski v. Portland Yacht Club*, 2001 ME 147, ¶ 13, 782 A.2d 783, 787. Although in certain circumstances the court may conclude that the board's decision is supported by implicit findings, "this does not negate the requirement that the Board make written factual findings with respect to waivers or that such findings must be supported by record evidence." *Bodack v. Town of Ogunquit*, 2006 ME 127, ¶ 19 n.7, 909 A.2d 620, 625.

In the case that is currently before the court, there is no written decision and no clear factual findings from the Board, in the record or otherwise, as to the three requirements listed above. The Board did not provide express waivers, and implicit waivers were not sufficiently obvious and cannot be easily inferred, based on the record as a whole. The factual findings present in the record, as to whether the Board issued the necessary waivers, are conflicting and unclear. Because the court is not certain of the factual basis for the Board's decision, it is necessary to remand the matter back to the Board for written findings of fact to clarify the record and make express any waivers that the Board did in fact make.

## III.    Due Process

The Board that made the decision at final hearing included two members who were not present at the first hearing. The petitioner argues that this fact alone demonstrates a violation of its due process rights.

Board decisions affecting property interests are entitled to procedural due process protections. *Pelkey v. City of Presque Isle*, 577 A.2d 341, 343 (Me. 1990).

"Procedural due process also assumes that Board findings will be made only by those members who have heard the evidence and assessed the credibility of the various witnesses." *Id.* The Law Court further clarified *Pelkey* in a subsequent case, stating that its decision was based on the fact that "members of the Board who had neither heard nor considered any evidence in association with the plaintiff's case issued findings of fact." *Green v. Comm'r of Dept. of Mental Health*, 2001 ME 86, ¶ 14, 776 A.2d 612, 616-17. In contrast, in *Green*, the decision maker considered the evidence and the submissions of the parties, as well as previous findings and recommendations, before issuing a decision. *Id.*

The City submitted affidavits from the two board members at issue, stating that they each reviewed the minutes of the prior March 11, 2008 hearing and reviewed all relevant material prior to participating in the hearing on April 8, 2008. The petitioner argues that the City should not be allowed to supplement the record because M.R. Civ. P. 80B(e) does not permit parties to "add to the record on appeal facts not considered, in the first instance, by the administrative agency."

The petitioner's allegation regarding due process involves events occurring outside of the administrative record below that may ultimately be relevant in determining an appeal. Whether or not the petitioner's due process rights have been violated is contingent on whether or not the board members reviewed previous findings before participating in the final hearing. Riverwatch failed to present any evidence, or even make the argument, that the two board members did not review the minutes from the prior hearing before the final hearing. The court cannot find that any violation of due process has occurred.

## CONCLUSION

For the reasons discussed above, this matter is REMANDED to the City of Auburn Planning Board for written factual findings on the issues that required waiver by the Board.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: November 17, 2008

Joyce A. Wheeler, Justice

STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-08-06
JAW - AND - 7/10/2009

RIVERWATCH, LLC,

    Petitioner

v.

CITY OF AUBURN,

    Respondent

DECISION AND ORDER

## BEFORE THE COURT

Before the court is a petition filed by Riverwatch, LLC (Riverwatch) asking for review of a decision of the City of Auburn Planning Board (the Board) approving a Site Plan Review and Special Exception on April 8, 2008. The petition was filed with this court pursuant to M.R. Civ. P. 80B.

## BACKGROUND AND PROCEDURAL HISTORY

This appeal was previously before the court, and by Order dated November 17, 2008 the court remanded to the Board to clarify on the record whether the Board had granted certain required waivers (the November Order). The court found that the Board had not provided express waivers, and implicit waivers were not sufficiently obvious and could not be easily inferred based on the record. Following remand, the Board reconvened on January 13, 2009. Both parties were permitted to present oral argument at the hearing. The Board subsequently voted on the remanded items, again approving the Site Plan Review and Special Exception.

On February 6, 2009, the court granted relief from the November Order to clarify that the court retained jurisdiction of the case after remand to the Board.

In a letter to the Planning Board Chair, dated February 9, 2009, Counsel for Riverwatch, Attorney Epstein, raised a new argument that the Board did not have subject matter jurisdiction because the waivers constituted zoning variances that should have properly been before the Zoning Board of Appeals (ZBA). On March 10, 2009, Riverwatch again contested subject matter jurisdiction before the Board; nonetheless, the Board voted to approve its written findings supporting its January 13, 2009 decision.

Riverwatch submitted to the court a supplemental brief on April 6, 2009, raising three arguments, including the argument that the Board lacks subject matter jurisdiction. First, Riverwatch contends that the Board exceeded its subject matter jurisdictional authority in granting setback waivers to the applicants. Second, Riverwatch claims that the Board erred in approving a loading zone that was partially located on a site other than the primary use site. Finally, Riverwatch argues that the Board erred in approving the application without an adequate statement of financial capacity from GFP Development Co., LLC (GFP). The court will discuss each issue in turn.

## DISCUSSION

### I. Standard of Review.

This court reviews a local board's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. Substantial evidence is evidence that is sufficient for a board to have reasonably found the facts as it did. *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990). The burden of persuasion is on the party challenging a board's decision to show that the evidence compels a different result. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (1996). The court

2

must not substitute its judgment for that of a board on factual issues. *Id.* Further, a board's "decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Id.*

## II. Setback Waivers.

The first issue before the court is whether the Board has the authority to grant waivers with respect to setback requirements. Section 3.69C(3) of the City of Auburn Zoning Ordinance (the Ordinance) requires a minimum setback for structures in the Central Business District (CBD) zone. Auburn, Me., Code § 3.69C(3)(a), (c). In its November Order this court found that the project did not satisfy the requirement of a CBD setback for the front yard of the hotel, yet the Board did not expressly state that it was waiving this requirement.

Following remand, the Board granted dimensional waivers for the front and rear yards of the proposed municipal garage and for the north and west front yards of the proposed hotel in its January 13, 2009 decision and its written findings of March 10, 2009. The Board found that pursuant to 7.1D(12) of the Ordinance, Chapter 29, the site plan and special exception request "constitutes suitable development, will not result in detriment to the City, neighborhood or environment, and the proposal satisfies the objectives and intent of site plan review, including Section 7.1.A and Section 7.1.B, . . ." The Board deemed it necessary to allow for a reduction of dimensional standards in order "to promote safe and convenient pedestrian and vehicular access and movements within the site and in connection with adjacent Streets and for the continued protection of physical and visual access to the adjacent Androscoggin River and Great Falls environmental features."

## A. Subject Matter Jurisdiction.

3

Riverwatch asserts that the waivers the Board granted with respect to setback requirements fall outside of the purview of the Board's subject matter jurisdiction. As a preliminary issue, the parties dispute whether Attorney Epstein's February 9, 2009 letter raising this argument is part of the record because it was submitted approximately one month after the Board's hearing and vote on the issues in January. Regardless of whether the letter is deemed part of the record, Riverwatch can raise subject matter jurisdiction for the first time on appeal. *See Landmark Realty v. Leasure*, 2004 ME 85, ¶ 6, 853 A.2d 749, 750 (finding that subject matter jurisdiction can be raised at any time, including on appeal). The City concedes this point but argues that the issues raised by Riverwatch are not jurisdictional because the Board had subject matter jurisdiction pursuant to Section 7.1(C)(12) of the Ordinance, which allows relaxation of dimensional requirements. Riverwatch counters that even though the Ordinance authorized the Board to grant such waivers, the Board did not have the authority to do so because the Legislature has granted the authority to provide zoning variances to the ZBA exclusively.

The authority to make a zoning determination must be expressly granted by statute or ordinance. *Oeste v. Town of Camden*, 534 A.2d 683, 684 (Me. 1987). In this case, Section 7.1C(12) of the Ordinance does grant the Board the authority to relax zoning requirements. Auburn, Me., Code § 7.1C(12). What is less clear is whether the ordinance properly confers this authority to the Board. An ordinance "shall not circumvent the Legislature's express and implicitly exclusive grant of variance-granting authority to ZBAs." *Perkins v. Town of Ogunquit*, 1998 ME 42, ¶ 9, 709 A.2d 106, 108-109. For example, the Law Court found that a planning board's modification of a binding zoning requirement is a

variance that must be committed to the discretion of a ZBA due to the express language of 30-A M.R.S. § 4353(2)(C). *Id.* Although the ZBA has primary jurisdiction over zoning issues, the Law Court has also recognized that 30-A M.R.S. § 4353 does not expressly preclude other local bodies from all matters concerning a municipality's zoning ordinance. *Id.*

The court must determine whether the Legislature has granted the ZBA with the exclusive authority to waive the setback requirements at issue in the case at hand. If the ZBA has exclusive jurisdiction over this issue, the Board's waivers of the requirements fall outside of the scope of its authority and the issue should either be remanded for compliance with the zoning ordinance requirement, or for the ZBA to consider the zoning variance pursuant to 30-A M.R.S.A. 4353(4-C) and the Ordinance. *See York v. Town of Ogunquit,* 2001 ME 53, ¶ 13, 769 A.2d 172, 178.

## B. The Authority to Grant Waivers with Respect to Zoning Issues.

Title 30-A, Section 4353, provides the ZBA with the authority to grant zoning variances and sets forth standards for determining whether waivers are appropriate. 30-A M.R.S.A. § 4353 (2008). General zoning variances may be granted by the ZBA only upon a finding of "undue hardship" pursuant to 30-A M.R.S.A. § 4353(4) (2008).[1] In the case of dimensional waivers, the ZBA applies a

---

[1] The statute provides the following conditions for the "undue hardship" standard:
defined as:
    A. The land in question can not yield a reasonable return unless a variance is granted;
    B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;
    C. The granting of a variance will not alter the essential character of the locality; and
    D. The hardship is not the result of action taken by the applicant or a prior owner.

less stringent "practical difficulty" standard pursuant to 30-A M.R.S.A. § 4353(4-C).[2] *York v. Town of Ogunquit*, 2001 ME 53, ¶ 9, 769 A.2d 172, 176 n.7, 8. If the setback requirements at issue in this case were before the ZBA, they would be subject to the "practical difficulty" inquiry as dimensional waivers.

In the case of *York v. Town of Ogunquit*, the Law Court recognized that although a planning board may waive subdivision standards requirements, boards are not granted the authority to waive zoning ordinance provisions. 2001 ME 53, ¶ 12, 769 A.2d 172, 177. Zoning ordinance provisions are specifically subject to the variance analysis mandated by state statute in 30-A M.R.S.A. § 4353(4) (2008). *Perkins v. Town of Ogunquit*, 1998 ME 42, ¶ 12, 709 A.2d 106, 110. Thus, deviation from zoning ordinance provisions may be obtained only when the requisite finding is made by the ZBA. *York*, 2001 ME 53, ¶ 12, 769 A.2d at 177-78. The Law Court later explained that *Perkins* and *York* "establish that a Planning Board may be vested with the power to waive municipal subdivision standards so long as the waiver does not, in effect, grant a variance from zoning

---

30-A M.R.S.A. § 4353(4) (2008).

[2] The statute includes a section for dimensional variances, which provides that a municipality may adopt an ordinance that permits a board of appeals to grant a variance from dimensional standards of a zoning ordinance when strict application creates a practical difficulty and other extenuating circumstances exist. Those conditions are listed as follows:

    A. The need for a variance is due to the unique circumstances of the property and not to the general condition of the neighborhood;

    B. The granting of a variance will not produce an undesirable change in the character of the neighborhood and will not unreasonably detrimentally affect the use or market value of abutting properties;

    C. The practical difficulty is not the result of action taken by the petitioner or a prior owner;

    D. No other feasible alternative to a variance is available to the petitioner;

    E. The granting of a variance will not unreasonably adversely affect the natural environment; and

    F. The property is not located in whole or in part within shoreland areas as described in Title 38, section 435.

30-A M.R.S.A. § 4353(4-C) (2008).

6

standards that otherwise govern the zone." *Sawyer v. Town of Cape Elizabeth*, 2004 ME 71, ¶ 14, 852 A.2d 58, 62.

## C. The Legislature's Amendment of 30-A M.R.S. § 4353(4-C).

Since the time the Law Court addressed these issues in *Sawyer v. Town of Cape Elizabeth*, 2004 ME 71, ¶ 14, 852 A.2d 58, 62, the Legislature has amended 30-A M.R.S. § 4353(4-C) to further clarify the authority of planning boards with respect to zoning issues and what constitutes a zoning variance. In 2005 the statute was amended to include the following provision:

> A zoning ordinance also may explicitly delegate to the municipal reviewing authority the ability to approve development proposals that do not meet the dimensional standards otherwise required, in order to promote cluster development, to accommodate lots with insufficient frontage *or to provide for reduced setbacks for lots or buildings made nonconforming by municipal zoning.* As long as the development falls within the parameters of such an ordinance, the approval is not considered the granting of a variance.

2005 ch. 244, § 2 (AMD) (emphasis added). Thus, a planning board has the authority to grant the waiver to "provide for reduced setbacks for lots or buildings made nonconforming by municipal zoning" because this is not deemed to be the granting of a variance.

According to the City, the Legislature intended the Board to have the ability to allow a lot such as the one in question to have the benefit of the reduced setbacks enjoyed by its neighbors. Riverwatch counters that the statutory language does not apply in this case because the lot itself is conforming and the building is not an existing structure that has been "made nonconforming by municipal zoning." Riverwatch asserts the provision should be interpreted narrowly, only to allow a developer who applies for a special exception to expand, or convert to new use, an existing nonconforming building or lot.

7

Riverwatch's argument is unpersuasive, and the 2005 amendment to 30-A M.R.S. § 4353(4-C) indicates that the Legislature intended that planning boards have the authority to grant reduced setbacks. In interpreting a statute, reviewing courts initially look to the plain language of the provisions to be interpreted. *Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 8, 943 A.2d 563, 566. If there is ambiguity in the plain language of the statute, a court may then look to the legislative history. *Id.* Here, it is clear that the development proposed falls within the parameters of the Ordinance because Section 7.1C(12) expressly grants the Board the authority to relax setback requirements. Auburn, Me., Code § 7.1C(12). The statute, 30-A M.R.S. § 4353(4-C), clearly conveys to the Board, as a municipal reviewing authority, the authority to grant reduced setbacks pursuant to Section 7.1C(12) of the Ordinance. The Statute expressly provides that planning boards may grant reduced setbacks to nonconforming buildings and lots, and doing so is not deemed a variance. The Board's interpretation of the statute is a reasonable and logical one and should not be disturbed on appeal.

## III.    The Loading Zone and Dimensional Requirements.

In the November Order, this court found that the Board failed to adequately waive the dimensional requirements for the loading zone. Under Section 4.1(A) and (C), the dimensional requirement for a loading zone for a building of this size is 10 feet by 50 feet. Previously, the project proposal did not meet this requirement. On remand, the loading zone was reconfigured to meet the dimensional requirements by increasing its size and avoiding the need for a dimensional waiver under the zoning ordinance. Because the primary-lot loading zone satisfied the dimensional requirements of the ordinance, the Board found that waiver was not required.

8

Riverwatch asserts that the modification to the loading zone design solved only one of the problems posed by the initial design in that it allowed the primary-lot zone to meet the minimum dimensional requirements. According to Riverwatch, the modification did not effectively address other requirements. Riverwatch asserts that the loading spaces will be arranged so as to require backing onto a public way in violation of Section 4.1A(13) of the Ordinance. According to the record and contrary to Riverwatch's assertion, the reconfiguration of the loading zone avoids the need for vehicles to back onto a public street. Instead vehicles will back onto the second lot. Supp. R. 133-34.

Riverwatch also argues that the site plan does not comply with the requirement that parking and loading spaces be located on the same lot as the principal lot pursuant to Section 4.1A(5) of the Ordinance. Section 4.1A(5) provides that "the required parking and/or loading space(s) shall be provided on the same lot as the principal use, building or structure they are required to serve." Based on a precise reading of the Section, there is no requirement that the maneuvering area be on the same lot as the off-street loading area. Supp. R. 133. The off-street loading proposal now meets the requirements of the Ordinance.

## IV. The Statement of Financial Capacity Requirement.

One of the requirements for a site plan review is a "statement by the developer assuring that he has the financial capabilities to fully carry out the project and to comply with the conditions imposed by the Planning Board." Auburn, Me., Code § 7.1D(3). In the November Order, this court found that Mullaney Hospitality Group (Mullaney), as one of the developers, did not provide the required statement of financial capability to carry out the project, and the Board did not state that it was waiving this requirement. Previously, the

9

only information submitted by Mullaney as part of the record was a brochure that did not contain any financial information.

Mullaney is no longer involved in the project, leaving GFP as the remaining developer. On remand, GFP did not request a waiver and instead assured the Board of its financial capabilities. GFP presented a letter from Maine Bank and Trust senior vice president dated December 11, 2008 indicating that the bank would entertain a financing request from the developer and that GFP possessed "all the qualifications necessary to carry out a project of this magnitude." Supp. R. 17-18. Riverwatch asserts that this does not satisfy the financial capability requirement because the letter disclaimed the existence of a commitment to provide financing for the project at the time it was written. The Board states in its findings that it considered both the financial letter from the bank and the City Council's authorization of bonds up to $5,000,000 for the construction of the parking garage in making its determination that GFP met the financial capacity requirement. The Board accepted as sufficient the evidence of financial capability, conditioning its acceptance on factual capability before issuing a building permit. Supp. R. 108. For these reasons, the financial capability requirement is sufficiently satisfied and supported by the record.

## CONCLUSION

The petition filed by Riverwatch is DENIED and the January 13, 2009 decision of the City of Auburn Planning Board is AFFIRMED.

DATED: 7/9/09

Joyce A. Wheeler, Justice

10