STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. AP-20-17

DANIEL HARFOUSH,

          Petitioner,

v.                                                ORDER

MAINE DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

          Respondent.


Before the court is a Rule 80C appeal by Daniel Harfoush from a July 2, 2020 decision by

the Commissioner of the Department of Health and Human Services (DHHS) upholding a finding

that Mr. Harfoush had received a Level I substantiation for abuse or neglect of a person with a

disability.


Prior Proceedings

In a notice dated May 14, 2019 the Adult Protective Services Unit (APS) of DHHS

determined that Mr. Harfoush had knowingly and recklessly caused a threat to the health and

welfare of an individual referred to in the record as "Mr. B" during the period from February 1 to

March 12 of 2019. Certified Record ("CR") 12. That determination was accompanied by an

undated report summary that is included in the administrative record at CR 19-25.

Mr. Harfoush appealed the APS decision, and his appeal was referred to an administrative

hearing officer for a recommended decision. CR 8. A de novo administrative hearing was held on

January 14, 2020, at which both the Department and Mr. Harfoush were represented by counsel.

CR 173-380.

REC'D CUMB CLERKS OF
NOV 18 '21 PM1:44

On May 18, 2020 the administrative hearing officer, Tamra Longanecker, issued an 18-page decision recommending that Mr. Harfoush's appeal be sustained and that the Level I substantiation be withdrawn. CR 153-70.

On July 2, 2020 the Commissioner issued a decision that did not accept the hearing officer's recommendation and concluded that the Department was correct in substantiating for abuse, neglect, or financial exploitation. CR 171. Mr. Harfoush has appealed the Commissioner's July 2, 2020 decision pursuant to Rule 80C.

Standard of review

On an appeal under Rule 80C the court may overturn an agency's decision if it is (1) in violation of constitutional or statutory provisions, (2) in excess of the agency's statutory authority, (3) made upon unlawful procedure, (4) affected by bias or by errors of law, (5) unsupported by substantial evidence, or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S. § 11007(4)(C).

In undertaking its review, the court cannot substitute its judgment for that of the agency and must affirm the agency's findings of fact if those findings are supported by substantial evidence in the record even if the record also contains inconsistent evidence or evidence contrary to the agency's decision. This does not involve weighing the merits of evidence. Instead, it involves review of the agency's factual findings to determine if there is competent evidence in the record to support those findings. *AngleZ Behavioral Health Services v. DHHS*, 2020 ME 26 ¶ 12, 226 A.3d 762; *Friends of Lincoln Lakes v. Board of Environmental Protection*, 2010 ME 18, ¶ 14, 989 A.2d 1128. The agency's findings can only be vacated if there is no competent evidence to support them. *Id.*

As discussed below, the issue in this case is complicated by the fact that while the Commissioner did not accept the hearing officer's recommendation and instead upheld the initial decision by APS, the Commissioner nevertheless stated that she adopted the hearing officer's findings of fact. CR 171.

The Underlying Facts

The following facts are taken from the 40 numbered findings of fact in the hearing officer's recommended decision (CR 155-59). Although there is some uncertainty, as discussed below, as to the Commissioner's adoption of all of the hearing officer's findings, the Commissioner at least adopted the numbered findings.

Daniel Harfoush worked for a private organization, Group Main Stream (GMS), as a coordinator of shared living services (also known as Adult Foster Care) and became the coordinator of such services for Mr. B in July 2018. It is not disputed that Mr. B has autism spectrum disorder, an intellectual disability, ADHD, and bipolar disorder and qualifies as an incapacitated and dependent adult who receives MaineCare benefits.[1] Mr. B is his own guardian.

Predating Harfoush's involvement, GMS had signed a contract with Janey Johnson to provide Mr. B with a private bedroom in her residence. In July 2018 Ms. Johnson gave her mother the bedroom where Mr. B had been staying and moved Mr. B onto an enclosed porch. This occurred shortly before Mr. Harfoush became Mr. B's shared living coordinator.

---

[1] The individual in question is referred to as Mr. B in the recommended decision of the hearing officer and the decision of the Commissioner and will be referred to as Mr. B in this order. An effort has been made to redact his name in portions of the administrative record, but his full name appears in other portions of the record.

3

The relationship between Ms. Johnson and Mr. B had been deteriorating before Mr. Harfoush became involved. Mr. B's team of providers[2] searched unsuccessfully through the fall and winter of 2018 for someone to replace Ms. Johnson as Mr. B's shared living provider.

On January 7, 2019 Mr. B was still sleeping in the enclosed porch and Heather Estabrook, his caseworker, emailed Mr. Harfoush that she was concerned that the enclosed porch was cold and asked Mr. Harfoush to accompany her on a home visit on January 28 (later rescheduled to February 1). On the February 1 home visit both Ms. Estabrook and Mr. Harfoush agreed that the enclosed porch was too cold. Mr. Harfoush documented in his home visit notes that Mr. B did not want to move out of the room. Ms. Estabrook informed Mr. Harfoush that she was going to make a report to APS. Her report stated that the temperature on the porch was 25 degrees. CR 157 - findings 15-18.

On February 8, 2019, when Mr. Harfoush was on vacation, APS caseworker Pamela Tower visited the Johnson residence. Another GMS employee was present in Mr. Harfoush's absence. It was evident that the enclosed porch was too cold (40 degrees on that date). During their discussion with Ms. Tower, Ms. Johnson and Mr. B agreed that Mr. B could move to an upstairs bedroom and that Ms. Johnson would place a lock on the upstairs bedroom door at Mr. B's request. (CR 157-58 – findings 19-27).

Mr. B returned from vacation on February 11, 2019 and called Ms. Tower, who told him that Mr. B was moving to an upstairs bedroom. (CR 158 – finding 28). On February 28, 2019 there was a meeting at Ms. Johnson's residence with Ms. Tower, Ms. Estabrook, and Mr. B. At that meeting, according to the hearing officer's findings, Mr. B told Ms. Tower that he was still sleeping

---

[2] In addition to Mr. Harfoush, Mr. B also had a caseworker, Heather Estabrook, from an organization called Alliance Case Management.

4

on the porch, and Ms. Tower told him he could not continue to live with Ms. Johnson if she could not provide him with a suitable room. (CR 159 – findings 31 and 32).

Although another portion of the hearing officer's recommended decision recites that Mr. Harfoush was at the February 28 meeting, the hearing officer did not find that he was made aware on that date that Mr. B was still sleeping on the porch. *See* CR 168. In fact, the hearing officer found that on February 28 Mr. Harfoush called Ms. Johnson to ensure that Mr. B was not sleeping on the porch and was told that Ms. Johnson understood he could not sleep on the porch and had not slept there for quite some time. (CR 159 – finding 34).

On March 7 Mr. Harfoush and his supervisor made an unannounced home visit and, according to the hearing officer's recommended decision, were told by Ms. Johnson and/or Mr. B that he was sleeping on a couch, apparently in the living room. (CR 159 – finding 35).

Ms. Johnson never put a lock on the upstairs bedroom. Mr. B never moved into the upstairs bedroom. Mr. B eloped from Ms. Johnson's residence on March 14, 2019 and was placed with another shared living provider. (CR 159 – findings 36-38).

Discussion

Persons who provide care or services to an individual with intellectual disability or autism and are found by APS to have abused, neglected, or exploited the individual in question are subject to the substantiation process. 10-149 C.M.R. ch. 1, § 7(1). A Level I substantiation results from a finding by a preponderance of the evidence that a provider "knowingly or recklessly" caused a threat to the health or welfare of an individual with intellectual disability or autism by causing or failing to protect the individual from physical or mental injury or impairment or deprivation of

5

essential needs. *Id.* § 7(2)(a)(i)(4).[3] The terms "knowingly" and "recklessly" have the meanings set forth in 17-A M.R.S. § 35.[4] *Id.* § 7(a)(ii).

The Commissioner was entitled to depart from the recommendation of the hearing officer, and there is no requirement that the decision-maker in an administrative hearing hear or read all the testimony. *Green v. Commissioner of Mental Health,* 2001 ME 86 ¶¶ 14-15, 776 A.2d 612.

The numbered findings of fact by the hearing officer have been summarized above, and the Commissioner's decision focuses on the fact that Mr. Harfoush became aware on February 1 that Mr. B was sleeping in an enclosed porch that was far too cold and concludes that, as Mr. B's shared living coordinator, Mr. Harfoush should have taken immediate action at that time. CR 171. The problem in this case is the Commissioner's statement that she adopted the findings of fact by the hearing officer,[5] and the hearing officer made findings of fact beyond those contained in the section containing her numbered findings. Some of those are directly inconsistent with the Commissioner's decision.

Specifically, in the course of giving the reasons for her recommendation, the hearing officer stated, "On review, the hearing officer does not find that Mr. Harfoush 'knowingly' caused a threat to Mr. B.'s welfare." CR 167. On that issue the hearing officer noted that after the APS visit on February 8 (when he was on vacation) Mr. Harfoush was advised that Mr. B was moving to an upstairs bedroom, that he had then monitored the daily notes from Ms. Johnson, had followed up

---

[3] The regulation also provides a basis for substantiating a provider who "intentionally" engaged in the prohibited conduct, but Mr. Harfoush was not substantiated for intentional conduct.

[4] A Level I substantiation is reported out to state and national registries after any due process hearing has been held. *Id.* § 7(3)(b)(vi). Mr. Harfoush testified without contradiction that he would lose his job based on a Level I substantiation.

[5] The Commissioner's decision states, "I adopt the findings of fact but I do NOT accept the recommendations of the Hearing Officer." *Id.* (capitalization in original).

6

with a phone call to Ms. Johnson, and had made an unannounced visit with his supervisor. *Id.* 166-67. On the March 7 unannounced visit, according to the hearing officer's recommended decision, both Ms. Johnson and Mr. B told Mr. Harfoush that Mr. B was not sleeping on the porch. *Id.* 167, citing Ex A-12.[6]

The hearing officer also stated, in the section on the reasons for the recommendation, that she did not find that Mr. Harfoush "recklessly" caused a threat to Mr. B's welfare, that Mr. Harfoush's testimony that he would never consciously disregard a threat to an autistic person was "credible," and that Mr. Harfoush had not ignored APS concerns. CR 169.

If, as the hearing officer found, Mr. Harfoush had not acted knowingly or recklessly, he could not have merited a Level I substantiation. In this connection, it bears emphasis that the Department, in its brief on the appeal before this court, argued that findings as to whether a person acted knowingly or recklessly are findings of fact rather than conclusions of law. *See* DHHS Brief dated December 18, 2020 at 6-7.

It is possible that in adopting the findings of fact made by the hearing officer, the Commissioner only intended to adopt the numbered findings in the hearing officer's recommended decision at CR 155-59. That was the conclusion reached by the Law Court in *Green v. Commissioner of Mental Health,* 2001 ME 86 ¶ 11. However in reaching that conclusion in the *Green* case, the Law Court noted that the Commissioner had been precise in specifying adoption of the facts contained in the hearing officer's capitalized "FINDINGS OF FACT" section. In this case the Commissioner did not specify which findings she was adopting but instead stated only

---

[6] Exhibit A-12 includes the following note, "Sleeping in Living room – Chooses to sleep on couch. Can sleep upstairs but doesn't want to." CR 109.

that she adopted the hearing officer's findings, which could seemingly indicate that she had adopted all of them.

A second issue is whether the Commissioner in her decision assumed that Mr. B was sleeping on the porch from February 1 until at least February 28 or later. In her numbered findings of fact the hearing officer did not make a finding as to when Mr. B stopped sleeping on the porch. The hearing officer's numbered findings support that all parties, including Mr. Harfoush, were aware that Mr. B was sleeping on the porch on February 1, that he was still sleeping there on February 8 (when Mr. Harfoush was on vacation), and that Mr. Harfoush was told by Ms. Tower when he returned from vacation on February 11 that Mr. B was moving to an upstairs room. (CR 158 - finding 28). As noted above, while the hearing officer found that Mr. B told Ms. Tower on February 28 that he was still sleeping on the porch, she did not find that Mr. Harfoush knew that and she also found that Mr. Harfoush was told by Ms. Johnson on that same date that Mr. B had not been sleeping on the porch for quite some time. (CR 159 – findings 31 and 34).

The Commissioner's decision also states that the Department was correct when it substantiated Mr. Harfoush "for abuse, neglect, or financial exploitation" of Mr. B (CR 171, emphasis added). Although the Department had originally made a finding of financial exploitation, the hearing officer noted that it subsequently withdrew that finding. (CR 162 n. 5). However, that is not reflected in the Commissioner's decision.

Accordingly, the appeal is remanded to the Commissioner for clarification as to which findings of the hearing officer the Commissioner is adopting, which she is declining to adopt, and for clarification of apparently inconsistent findings.

8

The entry shall be:

For the foregoing reasons, the appeal is remanded to the Commissioner to clarify the findings adopted or made by the Commissioner. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May 18, 2021

_____
Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 05/20/21

**Petitioner–Nelson Larkins, Esq.**
**Respondent–Kevin Beal, AAG**

9

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-20-17

DANIEL HARFOUSH,

Plaintiff

v.

ORDER

MAINE DEPARTMENT
OF HEALTH AND HUMAN SERVICES

Defendant

REC'D CUMF CLERKS O
DEC 1 '20 PM1:45

Defendant Maine Department of Health and Human Services (DHHS) has moved to seal

the court's file in the above-captioned case. This request is made pursuant to 22 M.R.S. § 3474

(governing confidentiality of adult protective records) and other statutes dealing with

confidentiality of medical information. The Department's motion has been agreed to by counsel

for petitioner.

At the outset, however, the Department's motion is overbroad. If granted, this would

withhold the entire court file, including the pleadings already filed, from public inspection. This

would violate the principle that court proceedings are presumptively open to the public, and the

court is not prepared to make a secret decision on a secret record.

However, to honor the statutory confidentiality set forth in 22 M.R.S. § 3474, the court will

order that the parties shall file any documents or information subject to § 3474 under seal with a

designation that the documents in question shall remain under seal pending further order of the

court. The court notes that § 3474(3)(B) provides that relevant information in adult protective

records shall be disclosed to a court on its finding that access to the records may be necessary for

determination of any issue before the court, and the court makes that finding in order to allow this case to be litigated.

Section 3474(3)(B) goes on to state that access to those records must be limited to in camera inspection "unless the court determines that disclosure of the information is necessary for the resolution of an issue pending before it." This last provision allows the court to allow disclosure to the extent necessary to decide the case on a public record.

The principle that court proceedings are open to the public is a fundamental tenet of our judicial system, protected by both the common law and the First Amendment. *See, e.g., Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978). This is particularly true of documents on which the court relies in determining litigants' substantive rights. *FTC v. Standard Financial Management*, 830 F.2d 404, 408 & n.4 (1st Cir 1987). One of the reasons why court records and proceedings are open to the public is to preserve public confidence that decisions are not being made behind closed doors to evade scrutiny.

Accordingly, while every effort shall be made to protect the confidentiality of adult protective records and the confidentiality of records relating to any alleged victim, at some point it is likely that enough of those records or the information contained therein shall have to be disclosed (if possible without identifying persons except by designations such as "Person A") so that the parties' arguments and the basis of any decision reached by the court shall be apparent.[1]

---

[1] The Department argues that it will be impossible to "de-identify" the alleged victim without sealing the entire record. Without reviewing the record, the court cannot adopt that conclusion. If total "de-identification" cannot be achieved, it will be necessary to reconcile, to the extent possible, the confidentiality interest underlying § 3474 with the principle that court decisions should not be based on a secret record.

2

This issue shall be addressed at a later stage in the case, given that in the meantime the records and information subject to § 3474 are to be filed under seal pending further order of the court.

The entry shall be:

The motion by defendant to seal the court record in the above-captioned case is granted in part. The court record and court file shall not be sealed, but the parties shall file any documents or information subject to 22 M.R.S. § 3474 under seal with a designation that the documents in question shall remain under seal pending further order of the court. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December __/__, 2020

_____
Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 12/3/20

**Petitioner–Nelson Larkins, Esq.**
**Respondent–Kevin Beal, AAG**

3