STATE OF MAINE                                    SUPERIOR COURT
YORK, SS.                                         CIVIL ACTION
                                                  DOCKET NO. AP-12-033 &
                                                  AP-12-20
ROBERT and DOROTHY BASSETT,  )                    JON —YOR- 7/5/2013
                             )
          Plaintiffs,        )
                             )
     v.                      )
                             )
THE INHABITANTS OF THE CITY  )
OF BIDDEFORD,                )                     ORDER
                             )
          Defendant,         )
                             )
MICHAEL AND JODI SMALL,      )
                             )
          Parties-in-Interest. )

I.     Background

Petitioners, Michael and Jodi Small own the property located at 4-6 Lester B.

Orcutt Boulevard, Biddeford Pool, Maine, Tax Map 59, Lot 113 (the "Property"). The

Property is located in the W-3, CR, and LC Zones. The Property has five occupancies: a

U.S. Post Office, a commercial kayak rental business, a commercial boat storage

business, and two dwellings. On October 4, 2010, Roby Fecteau, the Code Enforcement

Officer ("CEO"), issued a letter stating that the structure on the Property had four legally

existing nonconforming uses. The letter named the above uses with the exception of

commercial boat storage, and stated that the nonconformities on the Property arise from

Article XIV, Section 12 of the Land Development Regulations.

On August 10, 2011, Petitioners filed an application with the Planning

Department for shoreland zoning and site plan approval to: (a) convert the use of the low-

bay garage from a commercial kayak business to a residential garage; (b) construct a

1

residential addition roof deck above the low-bay garage, and (c) combine the residential low-bay garage and the addition into a single residential unit. The Planning Board held hearings on the application on September 7 and October 5, 2011.

During the October 5, 2011 hearing, the Board voted that the proposed project met eight of the nine general review criteria for projects in the Shoreland Zone. The Board initially voted that the project did not meet the ninth criteria finding that the project was not "in conformance with the provisions of Section 15, Land Use Standards". Initially, the Planning Board voted that the project did not meet the ninth criteria because while the boat storage had previously existed, the CEO had not recognized the boat storage as a legally nonconforming use. Continuing to allow the boat storage rental and allowing a swap of the kayak rental space for residential space would increase the number of uses on the property from four to five and therefore increase the density. During the hearing, Petitioner asked the Planning Board to consider, in the alternative, approval of the permit on the condition that the Petitioners cease use of the high-bay garage for boat storage. The Planning Board voted to approve the permit with the condition that there be no commercial use of the garage bays. On October 5, 2011, the Biddeford Planning Board granted a Shoreland Zoning Permit and Site Plan for Petitioners' Property to convert a portion of the property from commercial to residential use. On December 21, 2011, the City Planner issued the Planning Board's Notice of Decision together with Findings of Fact and Conclusions of Law. The approval required the Petitioners to cease using the high-bay garage for boat storage.

On November 4, 2011, the Petitioners filed an Administrative Appeal of the portion of the Planning Board's decision that required the Petitioners to stop storing boats

2

in the high-bay garage. On February 8, 2012, the Zoning Board of Appeals (ZBA) held a public hearing on the Petitioners Administrative Appeal. The ZBA received no new evidence but did receive oral and written arguments. The ZBA has appellate review of decisions of the Planning Board.

On March 20, 2012, the ZBA determined that the record of the Planning Board proceedings was inadequate and remanded the matter for further findings of fact on the number of occupancies at the Property. Upon review, the Planning Board found that there were five legally nonconforming occupancies on the Property. On July 10, 2012, the ZBA granted the Petitioners' appeal of the condition placed on the Planning Board's approval of the Shoreland Zoning Permit/Site Plan requiring that existing boat storage be eliminated and the entire garage must be converted to residential use.

Plaintiffs bring this 80B appeal challenging the issuance of the permit pursuant to the Municipal Code of the City of Biddeford.

II.     Standard

The Court reviews a decision of a state agency solely for "whether the [agency] correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. The Court must affirm the agency's finding of fact unless they are clearly erroneous. 5 M.R.S. § 11007(3) (2011); *Green v. Comm'r of the Dep't of Mental Health*, 2001 ME 86, ¶ 9, 776 A.2d 612. Matters of law are determined *de novo.* *H.E. Sargent, Inc. v Town of Wells*, 676 A.2d 920, 923 (Me. 1996). The burden of persuasion is born by the party seeking to vacate the agency's decision. *Bizier v. Town of Turner*, 2011 ME 116, ¶8, 32 A.3d 1048; *Anderson v. Me. Pub. Employees Ret. Sys*, 2009

3

ME 134, ¶3, 985 A.2d 501. If the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. If, however, the Board acted only in an appellate capacity, we review directly the decision of the Planning Board, or other previous tribunal, not the Board of Appeals. *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773.

III. Discussion

   a. Standing

The Defendant challenges the Plaintiffs' standing to bring the appeal arguing that Plaintiff failed to preserve their argument at the administrative level. "[I]n order to have standing to file an 80B appeal in the Superior Court, the appellant must prove (1) that it was a party at the administrative proceeding, and (2) that it suffered a particularized injury as a result of the agency's decision." *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, ¶ 8, 2 A.3d 284, 287 (*citations omitted*). Both Plaintiffs and Defendant have pled that Plaintiffs attended and participated in proceedings at the administrative level. Plaintiffs submitted a written list of their objections to the issuance of the permit to the Planning Board on September 7, 2011. (R. 25). The list of objections presented was sufficient to put all parties on notice of Plaintiffs' objections and to allow the Planning Board to address the concerns raised. *See Oliver v. City of Rockland*, 1998 ME 88, ¶ 7, 710 A.2d 905, 907. The Court finds that Plaintiff satisfied the first prong of the two-part standing test.

The Law Court has consistently held that a neighbor of a property granted a building permit need not show a high degree of proof of particularized injury in order to bring an appeal. *See Brooks v. Cumberland Farms, Inc.*, 1997 ME 203, ¶10, 703 A.2d

4

844, 847; *Christy's Realty Ltd. Partnership v. Town of Kittery*, 663 A.2d 59, 61-62 (Me.1995); *Forester v. City of Westbrook*, 604 A.2d 31, 32 (Me.1992). As Plaintiffs' property abuts the property on which the permit was granted, Plaintiffs have satisfied the second prong of the two-part standing test.

b. Challenge of the Permit

Plaintiffs challenge the issuance of the permit allowing Petitioners to alter the nonconforming structure. "A nonconforming structure may be added to or expanded after obtaining a permit from the same permitting authority as that for a new structure, if such addition or expansion does not increase the nonconformity of the structure" Art. XIV. 12(C)(1). In order to obtain a permit for the expansion of the building, Petitioner must have met the following general review criteria for projects in the Shoreland Zone:

1. Will maintain safe and healthful conditions;
2. Will not result in water pollution, erosion, or sedimentation to surface waters;
3. Will adequately provide for the disposal of all wastewater;
4. Will not have an adverse impact on spawning grounds, fish, aquatic life, bird or other wildlife habitat;
5. Will conserve shore cover and visual, as well as actual, points of access to inland and coastal waters;
6. Will protect archaeological and historic resources as designated in the comprehensive plan;
7. Will not adversely affect existing commercial fishing or maritime activities in a commercial fisheries/maritime activities district;
8. Will avoid problems associated with floodplain development and use; and
9. Is in conformance with the provisions of Section 15, Land Use Standards.

City of Biddeford, Me., Code Art. XIV § 16(D). The Planning Board reviewed Petitioners' plan and found that it met all of the above criteria without amendment with the exception of the ninth criteria. After Petitioners amended the plan to exclude the boat storage, the Planning Board found that all nine criteria were met. Plaintiffs argue that the

5

density, draining, and parking on the site are not in conformance with Section 15. Plaintiff also argues that the site should have been considered a multifamily dwelling and assessed under Article XI accordingly. As such, Plaintiffs contend that the project does not meet the requirements set out in the Code and a permit should not have been issued.

i. Density

Plaintiffs challenge the issuance of the permit on the basis that the plan allegedly is not in conformity with the density requirements of the Code. According to Art. XIV § 15(A), a residential dwelling requires a smaller minimum lot (30,000 within the Shoreland Zone adjacent to tidal areas) than does a commercial structure (40,000). Art. XIV § 15(A). However, Art. XIV § 7 states that where there is a conflict in the Code between section 12 and another section, section 12 will prevail. Section 12 holds that the use of a nonconforming lot may be changed upon a showing that there will be no further adverse impact from the use and approval of the Planning Board. Art. XIV § 12(C)(4). The Planning Board found five legally nonconforming uses on the Property. According to an application of Art. XIV § 15, the current five nonconforming uses require a greater minimum lot size than do the five nonconforming uses proposed in Petitioner's plan. Because the project proposes a decrease in the nonconformity under section 15, the Court finds a conflict between section 15 and section 12. The Court finds that section 12 holds, and the Court affirms the approval of the change in the use of the nonconforming lot.[1]

---

[1] Plaintiffs point to Section 15(A)(4) which states: "If more than one residential dwelling unit, principal governmental, institutional, commercial or industrial structure, or use, or combination thereof, is constructed or established on a single parcel, all dimensional requirements shall be met for each additional dwelling unit, principal structure, or use, except as provided in the above Table in the General Development District." Art. XIV § 15(A)(4). In this case there is a conflict between this section and Art. XIV § 12, which allows for alteration of nonconforming lots where the alteration will not increase the

6

ii. Expansion

Plaintiffs challenge the permit allowing expansion of the structure (the addition of a staircase and a roof deck) arguing that the expansion is in violation of Art. IV § 4(A). "A nonconforming structure shall not be added to or enlarged unless such addition or enlargement conforms to all the regulations of the zone in which it is located, or a variance is obtained." Art. IV § 4(A).

The expansion conforms to all of the regulations of the Shoreland Zone. The Planning Board made the factual findings that Petitioners' expansion would be approximately 206 square feet. Planning Board, Findings of Fact, ¶ 14, Oct. 5, 2011. The Planning Board found that the project would not impact the wetlands. *Id.* at ¶ 17. The Planning Board concluded that the project met Biddeford Code, State and Federal law; met fire safety standards; met exterior lighting requirements; provided sufficient on-site vegetation; would not have a significant detrimental effect on the peaceful enjoyment of abutting and adjacent properties; would not create hazards to public safety or traffic congestion; would not have a significant detrimental effect on the value of abutting or adjacent properties that could reasonably be avoided by modification of the project; the project is in compliance with the Biddeford comprehensive plan; the project will not have an adverse impact on the immediate neighborhood or community relative to the architectural design, scale, or visual integrity which could reasonably be avoided by modification of the plan; the design of the project does not result in significant flood hazards; adequate provision has been made for the prevention of ground or surface water contamination and to control erosion or sedimentation; adequate provision has been made

nonconformity. Where there is a conflict between another section and section 12, section 12 applies. Art. XIV § 7.

7

to handle drainage; there is sufficient water supply for the demands of the project; adequate provision has been made for the disposal of any hazardous waste; and the proposed use would not have an adverse impact on historic sites, significant wildlife habitat or wetland area, which could reasonably be avoided by reasonable modification or the proposal. Planning Board, Conclusions of Law, ¶ 1-18, Oct. 5, 2011; *See* Art. XI. Additionally, the Planning Board concluded that the project met all nine of the general review criteria for projects in the Shoreland Zone.[2] The Court similarly concludes that the expansion as proposed, including a rooftop deck and a staircase, meet all of the requirements of the Shoreland Zone.

iii. Site Plan Review

Plaintiffs also challenge the issuance of the permit on the basis that the Planning Board waived a full site plan review. In particular Plaintiff challenges the waiver of the site plan review with regards to parking. A permit may only be issued where off street parking is provided according to Art. VI § 49(A)(1). The plan provides for come of the current parking to be removed in order to install stairs to the roof deck. Petitioner contends that the Planning Board could not have made a determination of whether the plan met the standard set out in Art. VI § 49(A)(1) without a full site review. However, the city neither approved the Petitioners plan as to parking nor denied it. The Planning Board granted the permit on the condition that a parking layout plan be provided to the Planning Department and be approved by the Planning Engineer for the number of

---

[2] "provided that no commercial use is conducted in the 4 garage bays." Planning Board, Conclusions of Law, ¶ 19, Oct. 5, 2011. This condition was reversed by the Zoning Board of Appeals.

commercial and residential units on the lot. The Court finds that the Planning Board created a proper safeguard to ensure that the Property conforms to the Code.

iv. Multifamily Dwelling Requirements

Plaintiffs challenge the issuance of the permit alleging that the Planning Board failed to assess the structure according to the requirements of a multifamily structure as set out in Art. VI § 47. According to Art. II § 2, multifamily dwelling is defined as "buildings being designed exclusively for residential use and occupancy". Art. II § 2. A mixed use/commercial dwelling is defined as "a mixed use building containing one or more dwelling units as part of the use thereof but also containing one or more commercial or business uses and /or professional offices." *Id.* Because the structure in question is mixed use with both residential and commercial units, it is exclusively residential and need not comply with the requirements set out for multifamily structures.

IV.    Conclusion

The Court AFFIRMS the Decision of the Zoning Board of Appeals.

DATE:    7/5/13                                     _____
                                                    John O'Neil, Jr.
                                                    Justice, Superior Court

                                                    /s/ John H. O'Neil

9

ATTORNEY FOR PLAINTIFFS':
DAVID P. SILK, ESQ.
CURTIS THAXTER LLC
PO BOX 7320
PORTLAND, ME 04112-7320

ATTORNEY FOR DEFENDANT:
SANDRA L. GUAY, ESQ.
WOODMAN EDMANDS DANYLIK AUSTIN SMITH & JACQUES
PO BOX 468
BIDDEFORD, ME 04005

ATTORNEY FOR PARTY-IN-INTEREST:
JOHN C. BANNON, ESQ.
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND, ME 04104-5085